**Charles THESSEN, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 1607.**

Supreme Court of Alaska.

April 13, 1973.

Herbert A. Ross, of Ross & Tunley, Anchorage, for appellant.

John E. Havelock, Atty. Gen., Juneau, Charles M. Merriner, Asst. Dist. Atty., Anchorage, for appellee.

Before RABINOWITZ, C. J., and CONNOR and BOOCHEVER, JJ.

BOOCHEVER, Justice.

## OPINION

This case involves a question as to whether multiple sentences may be imposed for conviction on numerous counts of manslaughter, under circumstances whereby one act of arson involved multiple victims.

On October 12, 1966, Thessen was charged with 14 counts of first degree murder. Each count was the same but for the names of the 14 decedents. Each count incorporated the provisions of AS 11.15.010 [1] as follows:

[The accused] did purposely, wilfully, unlawfully and feloniously, while perpe-

---

1. AS 11.15.010 provides:

A person who, being of sound memory and discretion, purposely, and either of deliberate and premeditated malice or by means of poison, or in perpetrating or in attempting to perpetrate, rape, arson, robbery, or burglary kills another, is guilty of murder in the first degree, and shall be sentenced to imprisonment for not less than 20 years to life.

trating arson, kill [the decedent] by setting fire to the Lane Hotel, 246 C. Street, where [the decedent] was staying.

All of which was contrary to and in violation of AS 11.15.010 and against the peace and dignity of the state of Alaska.

At the close of the trial on the above-mentioned charges the jury was instructed that, to convict Thessen of first degree murder, they must find that he killed the named decedent by setting fire to the Lane Hotel, that he killed the named decedent purposely, that he killed the named decedent while in the perpetration of arson, and that the death of the named decedent was proximately caused by the defendant setting fire to the Lane Hotel. "Purposely to kill" was defined to mean that Thessen had intentionally taken the lives of those who had died in the Lane Hotel fire.[2] The instruction then stated that a person capable of reasoning from cause and effect may be found to intend the natural and probable consequences of his acts.

A lesser included offense instruction was given as to the murder charge, in part, as follows:

For the purpose of this case, manslaughter is defined as an unlawful, but unintentional killing of another while in the commission of an unlawful act *and it is the absence of the element of specific intent to kill which distinguishes manslaughter from murder* in the first degree as charged in the Indictment.

"Unlawful" means contrary to or prohibited by law and *in this case the unlawful act alleged is arson.* (Emphasis added.)

Thessen was acquitted on the first degree murder charges, but was found guilty of 14 counts of manslaughter. He was sentenced to three consecutive 20-year terms and 11 concurrent 20-year terms.

An appeal follows.[3] Among the issues before this court was a question as to the validity of the sentences.[4] Thessen's arguments were interpreted as an application for sentence review and were not discussed as this court did not at that time have authority to review sentences. The judgment was affirmed.

On February 19, 1971 Thessen applied for post-conviction relief pursuant to Criminal Rule 35(a), (b)(1) and (b)(7).[5] Thessen contends that he should not be subject to multiple sentences for what was basically one act of arson; that such sentences violate the double jeopardy provision of the Constitution of the State of Alaska, article I, section 9, as explained in Whitton v. State, 479 P.2d 302 (Alaska 1970); and that consequently the judgment of the superior court should be amended to reflect one 20-year sentence and vacated as to the 13 other 20-year sentences set out in the judgment of October 26, 1967. The su-

2. Intent to kill is a necessary element of felony murder under Alaska law. Gray v. State, 463 P.2d 897, 904 (Alaska 1970).

3. Thessen v. State, 454 P.2d 341 (Alaska 1969).

4. *Id.* at 354.

5. Criminal Rule 35 provides in part:
   (a) *Correction or Reduction of Sentence.* The court may correct an illegal sentence at any time. The court may reduce a sentence within 60 days after the sentence is imposed, or within 60 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 60 days after receipt of an order of the supreme court of the state or of the United States denying an application for relief.
   (b) *Post Conviction Procedure— Scope.* Any person who has been convicted of, or sentenced for, a crime and who claims:
   (1) that the conviction or the sentence was in violation of the constitution of the United States or the constitution or laws of Alaska;

   .    .    .    .    .

   (7) that there has been a significant change in law, whether substantive or procedural, applied in the process leading to applicant's conviction or sentence, when sufficient reasons exist to allow retroactive application of the changed legal standards;
   may institute a proceeding under this rule to secure relief.

perior court denied the petition [6] and Thessen has appealed from that judgment.

Initially, it is important to recognize the motive of the act for which the jury found Thessen guilty. By its finding of not guilty on the felony-murder charges but guilty of the manslaughter counts, the jury indicated that Thessen had not intentionally killed anyone.[7] He did, however, intend to commit arson. As a result of that unlawful act, 14 persons were unintentionally killed by him.

The question of whether more than one sentence may be imposed for a single act involving multiple victims is a difficult one. There has been a conflict as to whether constitutional prohibitions against double jeopardy such as article I, section 9, of the Constitution of the State of Alaska [8] prohibit multiple punishments as opposed to multiple trials.[9] In *Whitton*, a case involving the violation of two separate statutes in which there was but one victim, we held that "multiple punishments for one or 'the same' offense violate our constitutional inhibition against double jeopardy".[10]

■■ . Courts have long wrestled with the multifaceted problem of determining what constitutes one offense. Many such cases involve statutes which define separate crimes for piecemeal portions of one transaction. In the posture of this case, however, we are confronted with the violation of but one statute involving multiple victims. The answer to the question will depend in part on whether we focus on the single act of arson or the consequence involving multiple victims. We look first to *Whitton* for guidance in solving this dilemma. After discussing the "same evidence",[11] the "same transaction" [12] tests

6. The court stated:
   I find no language in the Whitton case, supra, which would indicate our Supreme Court, even if this case was governed by the rules in the Whitton case, made the holding in the Whitton case retrospective. Furthermore, the Whitton case in my opinion mandates that a judge in cases such as the Thessen case consider the nature of the personal property or rights [sic] sought to be protected in the broad objective of criminal law such as punishment of the criminal of [sic] his crime, rehabilitation of the criminal, and prevention of future crime, and it is such differences of conduct that are significant substantially in relation to the social interest involved and a multiple sentence may be imposed and the constitutional prohibition against double jeopardy will not be violated. Certainly it cannot be contended that the death of 14 persons is not substantial in relation to social interest [sic] involved and the personal property rights of others sought to be protected and calls for a severe punishment of the perpetrator of such crimes as was [were?] committed by the defendant in the Thessen case. Furthermore, there is no showing that the defendant has been cured of propensities to set fires as established in the trial of this case, and in the absence of such a showing it appears to be appropriate that he be incarcerated so that other innocent people will not be killed because of his propensities to set fires.

7. Thessen had a history of pyromania. When examined by a psychologist after being administered sodium amytal for narcoanalysis he indicated: "I didn't know there was people in there because someone said there wasn't. If I knew they were in there, I would have run in and got them out, some of them anyway."

8. Article I, section 9, of the Alaska Constitution provides in part:
   No person shall be put in jeopardy twice for the same offense.

9. *Compare* Note, Consecutive Sentences in Single Prosecutions: Judicial Multiplication of Statutory Penalties, 67 Yale L.J. 916 (1968) ; see discussion of history of the double jeopardy clause in Justice Frankfurter's dissent, Green v. United States, 355 U.S. 184, 198, 78 S.Ct. 221, 2 L.Ed.2d 199, 210 (1957) *with* Comment, Twice in Jeopardy, 75 Yale L.J. 262 (1965) ; 43 Notre Dame Law. 1017, 1018 (1968) ; Ex Parte Lange, 85 U.S. (18 Wall.) 163, 173, 21 L.Ed. 872, 878 (1874).

10. Whitton v. State, 479 P.2d 302, 310 (Alaska 1970).

11. By the same evidence test, different violations constitute one offense only when proof of all of them is established by the same evidence. Since in the subject case there would be different evidence as to the identity of each victim, under a literal application of the same evidence test, multiple offenses would be involved.

12. Under the same transaction test, there may be only one punishment if a number

and other recommended criteria, *Whitton* adopted a more flexible standard than either. The different statutes are to be compared as applied to the facts of the case in order to ascertain whether they involve differences in *intent or conduct*. If such differences exist, they are to be judged in light of the basic interests of society to be vindicated or protected. A decision must then be made as to whether those differences are substantial enough to warrant multiple punishments.[13]

■ The initial inquiry under *Whitton* is thus directed at a comparison of the different statutes violated as applied to the facts of the case in order to ascertain whether there are differences in intent or conduct. But in the subject case, only one statute is involved. We can compare one count with another and still apply the test. The sole difference between each count was the name of the victim involved. Thessen's intent and conduct[14] were identical as to each count. Since there is an absence of any difference in intent and conduct, we do not reach the other considerations set forth in *Whitton*—the judging of the differences "in light of the basic interests of society to be vindicated or protected". The *Whitton* test for ascertainment of double jeopardy when applied to the multiple counts charged against Thessen dictates the conclusion that but one offense was committed.[15] Where there has been but one statute violated by a single

act, without intent to harm multiple victims, the Alaskan constitutional prohibition against placing a person in jeopardy twice for the same offense prevents imposition of multiple punishments.

A different question would be presented if the Legislature had seen fit to increase the punishment for a single act of manslaughter by means of arson of a multiple-family dwelling. Although the jury's verdict absolved Thessen of any intent to kill, they did find that he intended to burn the Lane Hotel, and his conduct was such that he did so. Setting fire to a hotel where numerous people sleep does not involve the same conduct or intent as setting fire to a single family dwelling or an abandoned shed. The most grave of societal interests, preservation of the sanctity of life, is involved. If the Legislature so desired, it could recognize this interest by increasing the penalties for this offense. The Legislature has not seen fit to make this distinction. While the statutes do recognize and distinguish between setting fire to (1) a dwelling, (2) other types of buildings, (3) personal property, and (4) attempts at arson;[16] there is no distinction between manslaughter by arson in a dwelling house and arson in a multiple-person dwelling house. We have no power to read this distinction into the statute so as to increase the punishment for a single act beyond the maximum authorized by the Legislature.

of separate statutory violations arise out of a single criminal act or transaction. Under this test, Thessen could be held to have committed but one offense.

13. Whitton v. State, 479 P.2d at 312.

14. The state requests that we include "the consequences of an act" in the definition of the term, "conduct". "Conduct" is defined as "Personal behavior; deportment; mode of action; any positive or negative act". Black's Law Dictionary 367 (4th ed. 1957). We have found no definition of the term either in a case or dictionary broadening it to include the consequences of one's act.

15. Utilizing the criteria for retroactivity set forth in Judd v. State, 482 P.2d 273,

277–278 (Alaska 1971), we have concluded that the Whitton standard should be applied to this appeal. The purpose to be served by application of that standard is the prevention of unconstitutional punishment. Whitton does not involve a change of an old standard on which law enforcement authorities have relied. Moreover, retroactive application of the Whitton standard will have little effect on the administration of justice, as we do not anticipate many past cases will be affected.

16. There are four degrees of arson with different punishments established for each: AS 11.20.010, 11.20.020, 11.20.030 and 11.20.050.

The United States Supreme Court has recognized that the judiciary should be loath to impute to the Legislature an intent to impose multiple sentences for a single act that has multiple victims. In Bell v. United States,[17] the defendant had been found guilty of transporting two women across state lines in one truck for the purpose of having them engage in prostitution, a violation of the Mann Act. He was sentenced to consecutive terms on each of the two counts. The court stated:

> The punishment appropriate for the diverse federal offenses is a matter for the discretion of Congress, subject only to constitutional limitations, more particularly the Eighth Amendment. Congress could no doubt make the simultaneous transportation of more than one woman in violation of the Mann Act liable to cumulative punishment for each woman so transported. The question is: did it do so?[18]

The court answered this question as follows:

> . . . When Congress has the will it has no difficulty in expressing it— when it has the will, that is, of defining what it desires to make the unit of prosecution and, more particularly, to make each stick in a faggot a single criminal unit. When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity. And this not out of any sentimental consideration, or for want of sympathy with the purpose of Congress in proscribing evil or anti-social conduct. It may fairly be said to be a presupposition of our law to resolve doubts in the enforcement of a

penal code against the imposition of a harsher punishment. This in no wise implies that language used in criminal statutes should not be read with the saving grace of common sense with which other enactments, not cast in technical language, are to be read. Nor does it assume that offenders against the law carefully read the penal code before they embark on crime. It merely means that if Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses, when we have no more to go on than the present case furnishes.[19]

A similar result was reached by court in the Ladner v. United States [20] case involving the wounding of two federal officers by a single shot from a shotgun. The court found that but a single violation of the statute had occurred and that only one penalty could be imposed:

> "When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity." (Citations omitted.) This policy of lenity means that the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended. If Congress desires to create multiple offenses from a single act affecting more than one federal officer, Congress can make that meaning clear. We thus hold that the single discharge of a shotgun alleged by the petitioner in this case would constitute only a single violation of § 254.[21]

---

17. 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955).

18. *Id.* at 82–83, 75 S.Ct. at 622, 99 L.Ed. at 910.

19. *Id.* at 83–84, 75 S.Ct. at 622, 99 L.Ed. at 910–11.

20. 358 U.S. at 169, 79 S.Ct. 209, 3 L.Ed. 2d 199 (1958).

21. *Id.* at 178, 79 S.Ct. at 214, 3 L.Ed.2d at 205. 18 U.S.C. § 111, the recodification of § 254, provides:
Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated . . . while engaged in or on account of the performance of his official duties, shall be fined not more than $5,000 or imprisoned not more than three years, or both.

It is to be noted that in *Bell* and *Ladner*, there was an apparent intent to affect more than one victim. Utilizing the *Whitton* test, it would thus be conceivable to conclude that different intents were involved as to each victim, so that the Constitutional prohibition against double jeopardy would not be violated by multiple punishments. We would thus agree with the result reached by the California Supreme Court in the case of Neal v. State, 55 Cal.2d 11, 9 Cal.Rptr. 607, 357 P.2d 839 (1960) (referred to in the dissent filed to this opinion), since in that case Neal intended to murder two persons by burning down a dwelling with the intended victims inside. As pointed out in the *Neal* opinion, there was an "intent to harm more than one person." In the subject case, however, there was no intent to harm anyone and consequently, no intent to harm more than one person. Under these circumstances, it would be a violation of the Alaska double jeopardy prohibition to impose multiple punishments for Thessen's single act, despite its horrendous consequences.

█ The primary purpose of criminal law is to inhibit antisocial conduct by assigning appropriate punishment. As parodied by Gilbert and Sullivan in the Mikado, the object is "[t]o let the punishment fit the crime." To achieve this purpose the focus must be on the intent and conduct of the perpetrator rather than on fortuitous results.

█ Within constitutional limits,[22] the Legislature has the power to impose whatever punishments it deems appropriate for specific crimes. In fact, it has had little difficulty in expressing distinctions where it has seen fit to do so.[23] If the Legislature so desired, it could authorize a more stringent punishment for manslaughter resulting from acts of arson. To date, however, it has not done so.

Accordingly, but one sentence for the maximum period prescribed by the Legislature is permissible for Thessen's offense. The judgment denying Thessen's application for post-conviction relief is reversed and the case is remanded for further proceedings consistent with this opinion.

ERWIN and FITZGERALD, JJ., not participating.

RABINOWITZ, Chief Justice (dissenting).

The majority today concludes that

[w]here there has been but one statute violated by a single act, without intent to harm multiple victims, the Alaskan constitutional prohibition against placing a person in jeopardy twice for the same offense prevents [the] imposition of multiple punishments.[1]

I must respectfully dissent from that holding.

The majority relies heavily on our decision in Whitton v. State, 479 P.2d 302 (Alaska 1970) in reaching its conclusion.[2] In *Whitton* the trial court convicted the defendant of both robbery[3] and the use of firearms during the commission of the

---

22. In addition to the double jeopardy provision, the Constitution of the State of Alaska provides in article I, section 12:

Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted. Penal administration shall be based on the principle of reformation and upon the need for protecting the public.

23. *See supra* note 16.

1. Thessen v. State, Supreme Court Opinion, at 1195.

2. I agree that *Whitton* should be applied retroactively in appropriate cases. Robinson v. Neil, 409 U.S. 505, 93 S.Ct. 876, 35 L.Ed.2d 29 (January 16, 1973).

3. AS 11.15.240 provides:

A person who, by force or violence, or by putting in fear, steals and takes anything of value from the person of another is guilty of robbery, and is punishable by imprisonment in the penitentiary for not more than 15 years nor less than one year.

same robbery.[4] On appeal we held that the convictions for robbery and for the use of firearms during the commission of the same robbery amounted to conviction twice for the same offense. The inquiry in *Whitton* was thus essentially whether the distinct statutes under which Whitton was convicted mutually proscribed the same criminal behavior and therefore whether punishments for violating both statutes could be imposed consistently with our double jeopardy proscriptions. The court explained that:

> The problem we are faced with has arisen by reason of legislative division or refinement of what may be a unitary criminal episode into a number of statutory offenses, with differences based upon intent or means or method of perpetration.[5]

We determined that the legislature defined two different forms of the same offense and that under the facts of that case double jeopardy prohibited punishment for both.[6] In my view, *Whitton* is distinguishable from the case at bar and is not controlling.

In the case before us, we are concerned not with whether several distinct but overlapping statutes have been applied to exact multiple punishment for what is essentially a "unitary criminal episode," but rather whether Thessen's conduct violated a single statute several times over.

The majority seems to hold that since the 14 victims lost their lives as a result of Thessen's single act of arson, only a single conviction for manslaughter may be sustained. In Neal v. State, 55 Cal.2d 11, 9 Cal.Rptr. 607, 357 P.2d 839 (1960), the California Supreme Court faced a similar case. The defendant Neal was accused of attempting to murder two persons by burning down a dwelling with the intended victims inside. Neal was convicted on two counts of attempted murder. The Supreme Court of California allowed the separate convictions for attempted murder to stand. Speaking for the court Justice Traynor said:

> The purpose of the protection against multiple punishment is to insure that the defendant's punishment will be commensurate with his criminal liability. A defendant who commits an act of violence with the intent to harm more than one person or by a means likely to cause harm to several persons is more culpable than a defendant who harms only one person.[7]

As Justice Traynor later commented in his dissent in In Re Hayes, 70 Cal.2d 604, 75 Cal.Rptr. 790, 451 P.2d 430 (1969), the defendant's culpability must be assessed in light of the expressed legislative purpose, and that therefore it is of little consequence that several victims died as a result of a single muscular contraction.[8]

---

4. AS 11.15.295 provides:
   > A person who uses or carries a firearm during the commission of a robbery, assault, murder, rape, burglary, or kidnapping is guilty of a felony and upon conviction for a first offense is punishable by imprisonment for not less than 10 years. Upon conviction for a second or subsequent offense in violation of this section, the offender shall be imprisoned for not less than 25 years.

5. 479 P.2d 302, 312.

6. The Supreme Court in Ex Parte Lange, 85 U.S. (18 Wall.) 163, 173, 21 L.Ed. 872, 878 (1874) condemned as a violation of double jeopardy multiple punishment for the same offense. *See also* United States v. Benz, 282 U.S. 304, 307–309,

51 S.Ct. 113, 75 L.Ed. 354, 356–357 (1931).

7. 55 Cal.2d 11, 9 Cal.Rptr. 607, 612, 357 P.2d 839, 844.

8. 70 Cal.2d 604, 75 Cal.Rptr. 790, 451 P.2d 430, 438. Other courts have adopted the same basic position. *Accord* United States v. Tarrant, 460 F.2d 701 (5th Cir. 1972) (possession of five unregistered firearms held to constitute five separate offenses); United States v. Hodges, 436 F.2d 676 (10th Cir. 1971) (assault on several penal officers during jail house altercation held to constitute multiple offenses); State v. Miranda, 3 Ariz.App. 550, 416 P.2d 444 (1966) (separate manslaughter convictions for each victim of a single traffic accident upheld); State v. Fredlund, 200 Minn. 44, 273 N.W. 353

In the case at bar, the court focuses on what it characterizes as a singular physical act, and concludes that there can be one "allowable unit of prosecution." [9] Alaska's relevant statute provides that:

> . . . a person who unlawfully kills another is guilty of manslaughter, and is punishable by imprisonment in the penitentiary for not less than one year nor more than 20 years.[10]

The controlling language defining the offense of manslaughter is "unlawfully kills another." In my view this language reflects the legislature's intent to have the offense depend on the consequences of the defendant's act and not the means by which those consequences were achieved. The majority would apparently uphold separate manslaughter convictions had Thessen burned down 14 houses, each containing one of his victims. Under that analysis a person convicted of 14 counts of manslaughter under those circumstances is more culpable than a defendant who causes the death of one person by burning down one house. The majority thus seems to reward the defendant for the efficiency of his criminal behavior, by defining the offense in terms of the number of physical acts which produced the unlawful killings. AS 11.15.040, however, requires no such inquiry. In my view this manslaughter statute measures the wrongfulness of the defendant's behavior by the number of victims.

Each unlawful killing under AS 11.15.040 is an offense under the statute. To read the statute as the majority has does violence to its plain language.[11] I would therefore affirm Thessen's 14 separate convictions of manslaughter.[12]

(1937) (separate third degree murder prosecutions permitted where two victims killed in single automobile accident); State v. Gratz, 254 Or. 474, 461 P.2d 829 (1969) (armed robbery of two persons at same time and place held to constitute two separate crimes).

9. The term "allowable unit of prosecution" was coined in United States v. Universal C.I.T. Credit Corp., 344 U.S. 218, 221, 73 S.Ct. 227, 97 L.Ed. 260, 264 (1952).

10. AS 11.15.040.

11. Under a different statute, the number of victims may, of course, have no bearing on the defendant's culpability. Thus in Ladner v. United States, 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958), the United States Supreme Court held that in light of the lenity doctrine, a single shotgun blast directed at two federal officers could result in only one assault conviction under 18 U.S.C. § 254. And in Bell v. United States, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955), the Court expressed a legitimate doubt as to whether the appropriate unit of offense under the Mann Act should depend on the number of women transported across state lines.

The majority thought that it did not. Justice Minton, in dissent, thought that the statute protected individual women and girls from exploitation, and as he succinctly put it:

> Surely [Congress] did not intend to make it easier if one transported females by the bus load. 349 U.S. 81, 84, 75 S.Ct. 620, 623, 99 L.Ed. 908, 911.

12. On the other hand I would remand the case to the sentencing court for a hearing to determine whether imposition of the three consecutive twenty year terms of imprisonment was an appropriate sentence in the case at bar. State v. Pete, 420 P.2d 338 (Alaska 1966). AS 11.05.050 does not furnish any guidelines as to when consecutive sentences should be imposed. Minimally, I think the trial judge should be required to state his reasons why consecutive sentences were appropriate in this case. See, Johnson, Multiple Punishment and Consecutive Sentences: Reflections on the Neal Doctrine, 58 Cal.L.Rev. 357, 367–69 (1970), American Bar Association Standards Relating to Sentencing Alternatives and Procedures § 3.4, at 171–172, 176–178 (Approved Draft, 1968).