James K. JACINTH, Appellant,

v.

STATE of Alaska, Appellee.

No. 3507.

Supreme Court of Alaska.

April 6, 1979.

Irwin Ravin and Clem H. Stephenson, Fairbanks, for appellant.

Natalie K. Finn, Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

## OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

RABINOWITZ, Justice.

James Jacinth was convicted of second degree arson [1] and manslaughter [2] in superior court. In bringing this appeal he asserts that evidence corroborating his confession was insufficient to justify submitting the case to the jury; that the jury's verdict was contrary to the weight of the evidence; and that the sentence of ten years on each count, to run consecutively, is excessive. We affirm.

This prosecution arose out of a fire that completely destroyed a Fairbanks bar and adult theater known as "The City" in 1973. The first of two fires that occurred at the premises of The City was detected sometime before midnight on September 9; it was extinguished to the satisfaction of University of Alaska firemen who responded to the call. Around 4:00 a. m. on September 10 a second fire broke out, which consumed the building and claimed the life of Pete Aiken, Jr., who lived on the premises. Jacinth, in statements to some five different people,[3] claimed responsibility for the fires—on some occasions saying that he had

---

1. AS 11.20.020 provides:

 *Second degree arson.* A person who wilfully and maliciously sets fire to or burns or causes to be burned, or who aids, counsels or procures the burning of a building or structure of any kind whether his property or the property of another, not included or described in § 10 of this chapter, is guilty of arson in the second degree and upon conviction is punishable by imprisonment for not less than one nor more than 10 years, or by a fine of not more than $5,000, or by both.

2. AS 11.15.040 provides:

 *Manslaughter.* Except as provided in §§ 10–30 of this chapter, a person who unlawfully kills another is guilty of manslaughter, and is punishable by imprisonment in the penitentiary for not less than one year nor more than 20 years.

3. Appellant made statements claiming responsibility for the fire to the following people: David L. Israelson of the Alaska State Troopers, on April 3, 1976; Theda Smith, in late 1975; Dr. Herman South, a Fairbanks psychiatrist, in September of 1973; Erda Fuller, a nurse at Careage North in Fairbanks, in April of 1974; and Cloyd Roger McCoy, Alaska State Trooper criminal investigator, on April 4, 1976.

set two fires, and on other occasions that he had started only the earlier one. At trial, though, he denied his guilt and claimed that he had fabricated the confessions on the basis of newspaper accounts. At the time of his arrest, appellant was indigent and said he wanted to go to jail to publicize certain injustices he felt he had suffered at the hands of the state.

In the confession that ultimately led to his arrest, a tape recording of which was played at trial, Jacinth went into some detail in describing the building and the way he had ignited the fire in it. In that statement he described to C. R. McCoy, an investigator for the Alaska State Troopers, how he had climbed through an opening into the attic of The City. Jacinth told of gaining access by standing on some lumber that was stored near the opening. He described the difficulty he had had in moving about in the attic, because of the construction of the ceiling of the room below, and the absence of any light source. And, finally, he told McCoy how he had set fire to the sawdust that was used as insulation in the building and marked the spot on a diagram corresponding to the point where he had started the fire. William Shechter, assistant fire chief at the University of Alaska fire department, testified to substantially the same details regarding The City, as did other witnesses. In addition, he marked the origin of the first fire on a diagram in the same area as Jacinth had and stated that, in his opinion, the fire had had no accidental origin and that it had been intentionally set.[4]

■ The rule requiring corroboration of an accused criminal's confession is stated in *Armstrong v. State*, 502 P.2d 440, 447 (Alaska 1972).

It is a settled principle of American jurisprudence that a criminal conviction

4. Appellee's brief identifies the following independent evidence in corroboration of statements made by Jacinth. This information is sustained by the record.

| [INDEPENDENT EVIDENCE] | APPELLANT'S STATEMENTS |
|---|---|
| 1. Two fires occurred | Two fires occurred |
| 2. The first fire was between 9:00 p. m. and the early morning hours | The first fire was around 11:30 p. m. |
| 3. The second fire was around 4:00 a. m. | The second fire was around 4:00 a. m. |
| 4. The first fire originated in the sawdust in the roof | The first fire originated in the sawdust |
| 5. No natural causes could explain the source of the fire, which meant that it had been intentionally set | The fire was set by the use of a matchbook, cigarette, lighter fluid and sawdust |
| 6. The only apparent access to the roof was through an opening above the ceiling | Entry was made through an opening above the ceiling |
| 7. A ladder was placed under the opening after the first fire | A ladder might have been in the area |
| 8. Lengths of lumber were stored near the opening | Access to the opening was gained by standing on some lumber which was near the opening |
| 9. There was no light in roof/attic area | There was no light in the roof/attic area |
| 10. Crawling through the attic required care, because of the lack of good support in the ceiling | There was some danger of falling through the ceiling because of the nature of the joists |
| 11. The first fire showed mainly smoke | The first fire just smoked and didn't blaze |
| 12. Three people put out the fire with a fire extinguisher | Someone put out the first fire with a fire extinguisher |
| 13. The second fire appeared to originate also in the rear section of the building | The second fire was started further back in the attic |

must rest on firmer ground than the uncorroborated confession or admission of an accused. To avoid convicting a person solely out of his own admissions, the law requires, for a case to be submissible to the trier of fact, additional independent evidence. [footnote omitted]

But the extent of corroboration required varies widely among jurisdictions. *Armstrong, id.* at 447, goes on to clarify the standard to be applied in Alaska courts.

We feel that the proper and most workable rule is the one laid down for the federal courts in *Opper v. United States*, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954), where the court held that corroborative evidence need not be sufficient, independent of the statements, to establish the corpus delicti. Rather, the prosecution must introduce "substantial independent evidence which would tend to establish the trustworthiness of the statement." *Id.* at 93, 75 S.Ct. at 164, 99 L.Ed. at 109.

In order to justify submitting this case to the jury, therefore, the trial judge was required to have found "substantial independent evidence which would tend to establish the trustworthiness" of Jacinth's confession.

 The corpus delicti of arson involves two elements: the burning of the building in question and a criminal agency as the cause of that burning.[5] The burning of The City is not disputed. And independent evidence produced at trial, as discussed above, provided an adequate basis for the finding that this fire was the result of a criminal act. Thus we can detect no error in the superior court's finding that appellant's confession was sufficiently corroborated to justify presenting the case to a jury.

 In determining the sufficiency of the evidence supporting a criminal conviction, this court applies the standard of review set out in *Kvasnikoff v. State*, 521 P.2d 903 (Alaska 1974). There we held that:

[T]he evidence and the inferences to be drawn therefrom are to be viewed in a light most favorable to the state. The question, then, is whether the finding of guilt is supported by substantial evidence, that is, such relevant evidence which is adequate to support a conclusion by a reasonable mind that there was no reasonable doubt as to appellant's guilt.[6]

On the basis of Jacinth's confessions and independent testimony discussed above, the jury could have reasonably concluded that Jacinth was guilty beyond a reasonable doubt.[7] We therefore hold that Jacinth's convictions for the offenses of second degree arson and manslaughter should be upheld.[8]

 Jacinth further argues that our decision in *Thessen v. State*, 508 P.2d 1192 (Alaska 1973), precludes the superior court from imposing multiple sentences in the case at hand. In *Thessen* the defendant was charged with setting a fire that resulted in the deaths of fourteen people; he was found guilty of fourteen counts of manslaughter and received fourteen separate sentences. We found those multiple sentences to be violative of the double jeopardy provision of the Constitution of the State of Alaska, article I, section 9, and cited *Whitton v. State*, 479 P.2d 302 (Alaska 1970), as setting out the appropriate test. And we distinguished the factual situation in *Thessen* from *Whitton* in the following way:

The initial inquiry under *Whitton* is thus directed at a comparison of the different statutes violated as applied to the facts of the case in order to ascertain whether there are differences in intent or

---

5. *State v. Turner*, 58 Wash.2d 159, 361 P.2d 581, 582 (1961); *State v. Washington*, 5 Or. App. 347, 483 P.2d 465, 466 (1971).

6. *Kvasnikoff v. State*, 521 P.2d 903, 904 (Alaska 1974), *quoting Beck v. State*, 408 P.2d 996, 997 (Alaska 1965). *See also Hughes v. State*, 513 P.2d 1115, 1117 (Alaska 1973).

7. *See Armstrong v. State*, 502 P.2d 440, 447 (Alaska 1972).

8. It is stipulated that the death of Pete Aiken, Jr., was caused by the fire.

conduct. But in the subject case, only one statute is involved.[9]

Since we are concerned with a comparison of different statutes, *Thessen* is not relevant to the present inquiry. In *Whitton* we held that the question of whether a unitary criminal act that violates several statutes constitutes more than one offense for double jeopardy purposes must be answered "by focusing upon the quality of the differences, if any exist, between the separate statutory offenses, as such differences relate to the basic interests sought to be vindicated or protected by the statutes."[10] These basic interests include "the nature of personal, property or other rights sought to be protected" by the statute.[11] Here the separate statutory offenses to be considered are those of second degree arson and manslaughter. Since the former protects a property interest and the latter the paramount personal interest of protection of human life, we hold that they should be considered separate offenses under the *Whitton* test.[12]

▮ We also held in *Whitton* that when multiple sentences are imposed, the trial judge must affirmatively state reasons for his decision to do so.[13] *State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970), sets forth the factors that a judge must consider in passing sentence. In the present case, the trial judge referred specifically to *Chaney* and discussed several of the sentencing criteria that case requires. Deterrence of both Jacinth himself and other members of society who might share his criminal tendencies, the low likelihood of rehabilitation of appellant into a noncriminal member of society, and the necessity of isolating him from society to prevent further criminal activity were all separately considered. In view of the seriousness of these crimes and of the trial court's deliberate consideration of the *Chaney* requirements, we cannot say that the sentencing judge was clearly mistaken in imposing consecutive sentences of ten years on each count.[14] We also hold that the *Whitton* rule, requiring an affirmative statement of the reasons for imposing multiple sentences, was satisfied in this case.

▮ Finally, Jacinth argues that since he was not characterized as a worst offender, *Donlun v. State*, 527 P.2d 472 (Alaska 1974), requires that he receive something less than the maximum sentence for the arson count under which he was convicted.[15] If there is a basis for applying that label to a convicted criminal, however, there is no requirement that the sentencing judge utter the phrase "worst offender." *Price v. State*, 565 P.2d 858, 862 (Alaska 1977). Here, the superior court found that Jacinth's mental condition and criminal record indicate that his pattern of criminal behavior is well established and that future criminal behavior could be anticipated if he were released. This finding is borne out by the presentence report, where Jacinth is described as "an extremely dangerous individual from whom the community needs protection" and "a worst type of offender." These are Jacinth's fifth and sixth felony convictions. Given the seriousness of the subject offenses and the foregoing, we conclude that the superior court was justified in sentencing Jacinth as a worst offender.

Affirmed.

9. *Thessen v. State*, 508 P.2d 1192, 1195 (Alaska 1973).

10. *Whitton v. State*, 479 P.2d 302, 312 (Alaska 1970).

11. *Id.*

12. *See Catlett v. State*, 585 P.2d 553, 558 (Alaska 1978).

13. *Whitton v. State,* 479 P.2d 302, 312 (Alaska 1970).

14. When a sentence is appealed, we will make our own examination of the record and will modify the sentence if we are convinced that the sentencing court was clearly mistaken in imposing the sanction it did.
 *State v. Chaney*, 477 P.2d 441, 443–44 (Alaska 1970).

15. Appellant was not given the maximum sentence for manslaughter.