**Clifford MOSSBERG, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–1374.**

Court of Appeals of Alaska.

Feb. 27, 1987.

Raymond Funk, Asst. Public Defender, Fairbanks, and Dana Fabe, Public Defender, Anchorage, for appellant.

James V. Gould, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Harold M. Brown, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., SINGLETON, J., and JEFFERY, Superior Court Judge.[*]

## OPINION

BRYNER, Chief Judge.

Following a jury trial, Clifford W. Mossberg was convicted, in March 1978, of ar-

---

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

son in the first degree. Former AS 11.20.-010. Superior Court Judge Gerald J. Van Hoomissen sentenced Mossberg to a term of fifteen years' imprisonment. Mossberg appealed his conviction and sentence. In *Mossberg v. State*, 624 P.2d 796 (Alaska 1981), the Alaska Supreme Court affirmed his conviction but remanded the case to the superior court to determine whether Mossberg had been accorded his right of allocution. The supreme court held in abeyance Mossberg's claim that his sentence was excessive. *Id.* at 806–07.

Following the remand, Mossberg fled the jurisdiction. The supreme court dismissed Mossberg's sentence appeal, without prejudice to its renewal upon Mossberg's return to Alaska. In 1985, Mossberg was arrested in Belize, Central America, and was returned to Alaska. He thereafter moved for a reduction of his arson sentence,[1] arguing that in the years since his conviction, changes in his personal circumstances and in the law justified imposition of a less stringent term. Mossberg alternatively contended that his original sentence was excessive. After a hearing, Judge Van Hoomissen declined to reduce the original sentence. Mossberg appeals.

Mossberg's principal contention is that the sentence originally imposed is excessive.[2] Mossberg's conviction stemmed from the burning of the Bennett Lodge at Mile 101, Steese Highway, on April 20, 1977. In *Mossberg v. State*, 624 P.2d at 799 (footnotes omitted), the Alaska Su-

preme Court described the circumstances of the offense as follows:

> [I]n March 1976, Mossberg gave Bennett, the owner of the Lodge, $2,000 for an option to buy the Lodge. Having failed to tender the balance within the required time, Mossberg lost the option and forfeited the $2,000. Subsequent attempts to renegotiate the deal failed, and Bennett rejected Mossberg's final offer in March of 1977. This is allegedly Mossberg's motive for arranging the arson.
>
> Mossberg contacted Judkins, who approached appellant Smith (then residing with the Judkinses). Smith initially approached one Jim Burns but was rejected; he subsequently contacted Williams, who agreed to do the job. It was planned for the spring of 1977, while Mossberg was to be in Arizona. The Lodge was burned on April 20, 1977.

At the time of sentencing in 1978, Mossberg was thirty-six years of age. He had never previously been convicted of a crime. Under the statute then applicable, former AS 11.20.010, Mossberg's offense was classified as first-degree arson; as such, it was punishable by a maximum term of twenty years' imprisonment. In sentencing Mossberg to a fifteen-year term, Judge Van Hoomissen concluded that Mossberg's conduct was among the worst in its class and that Mossberg was a dangerous offender. In particular, the judge emphasized the nature and extent of the loss, the premeditat-

---

1. As a result of his absconsion from Alaska, Mossberg was separately convicted of violating the conditions of his release pending appeal. He was sentenced to a consecutive term of five years with two years suspended for that offense. Mossberg does not contest either the conviction or the sentence in that case.

2. Under ordinary circumstances, an appeal from the denial of a motion to reduce a sentence is not the appropriate procedure for challenging the reasonableness of the sentence originally imposed. We have nevertheless elected to review the merits of Mossberg's challenge to the original sentence. There are several unusual factors in this case. First, the superior court, in passing on Mossberg's motion to reduce his sentence, permitted argument concerning the appropriateness of the original sentence. In effect, the superior court reevaluated its initial

sentencing decision in light of Mossberg's argument on reconsideration. Second, the state has not advanced a procedural objection to our consideration of the excessiveness issue on appeal, and has responded to Mossberg's arguments on their merits. Third, Mossberg's original sentence appeal was never decided; it was dismissed without prejudice to reinstatement upon his return to Alaska. While Mossberg did not take the formal steps necessary to seek reinstatement of the sentence appeal, the record indicates that his failure to do so stemmed from a mistaken belief that he would be entitled to appellate review of the excessiveness issue if his motion for reduction were denied by the superior court. Given these circumstances, we believe it appropriate to treat this matter as a reinstated sentence appeal.

ed and elaborate nature of Mossberg's plan, and the fact that the plan was apparently motivated by vindictiveness.

While we agree that these factors significantly increase the seriousness of Mossberg's offense, we cannot agree that Mossberg's conduct approaches the most serious in the class of first-degree arsons, as that offense was defined under former AS 11.20.010. Nor do we agree that Mossberg can properly be classified as a particularly dangerous offender. Accordingly, we conclude that the fifteen-year term imposed by the superior court is clearly mistaken.

Initially, we think it was error to classify Mossberg's conduct as approaching the most serious within the former definition of first-degree arson. At the time of Mossberg's offense, first-degree arson was broadly defined; former AS 11.20.010 did not differentiate between various levels of actual danger posed in a given case. Included in the former definition of first-degree arson were all acts of arson committed in "a dwelling house, whether occupied, unoccupied or vacant, or a kitchen, shop, barn, stable or other outhouse that is a part of a dwelling, or belongs to or adjoins a dwelling...."

As the state acknowledges in its brief, the traditional view is that the primary interest addressed by the prohibition against arson—and particularly by the statute proscribing first-degree arson—is the safety of persons rather than the protection of property. *See generally* 6A C.J.S. *Arson* § 4 (1975). By broadly encompassing occupied, unoccupied, and vacant dwellings within the scope of first-degree arson, former AS 11.20.010 recognized that an increased risk of injury will generally be present when a fire is set in a building meant for habitation.

Because the basic purpose of the first-degree arson statute is protection of persons, the primary measure of seriousness in any specific first-degree arson is the extent of actual risk to others occasioned by the offense. Accordingly, arsons committed in dwellings that were occupied at the time of the offense must be viewed

as being among the most serious in the class of first-degree arsons; in such cases, the actual risk of personal injury is likely to be the greatest. Conversely, arsons committed in vacant dwellings would generally pose the least risk and fall among the least serious within the definition of the offense. Of course, the extent of property damage is a highly significant consideration in determining seriousness. However, the primary focus must remain on risk to others, since, under the former statutes, it was the inherently greater risk involved in the burning of a dwelling that accounted for the distinction between first- and second-degree arson.

In this regard, it is particularly useful to consider the current statutory provisions dealing with arson. Under AS 11.46.400, the setting of a fire qualifies as first-degree arson only if "that act recklessly places another person in danger of serious physical injury." As currently defined, first-degree arson is a class A felony, punishable, as was former AS 11.20.010, by a maximum term of twenty years' imprisonment. In contrast, the current version of AS 11.46.410 defines arson in the second degree to include acts of arson to a building that do not result in actual risk to persons. This offense is a class B felony, punishable by a maximum term of ten years' imprisonment. AS 12.55.125(d).

While the current statutory scheme was adopted after Mossberg had already been convicted and sentenced and, therefore, certainly has no direct application to his case, it is nevertheless highly relevant as a contemporary indication of legislative thinking with respect to the seriousness of the conduct included within the former arson statute. *See, e.g., Whittlesey v. State,* 626 P.2d 1066 (Alaska 1980); *Law v. State,* 624 P.2d 284 (Alaska 1981); *Ingram v. State,* 703 P.2d 415, 436 (Alaska App.1985), *aff'd,* 719 P.2d 265 (Alaska 1986); *Bolhouse v. State,* 687 P.2d 1166, 1178 (Alaska App.1984); *Wright v. State,* 651 P.2d 846 (Alaska App.1982); *Sundberg v. State,* 636 P.2d 619 (Alaska App.1981), *appeal after remand,* 652 P.2d 113 (Alaska App.1982).

In the present case, it is undisputed that the arson committed by Mossberg involved an unoccupied lodge. No actual risk to persons was created by the offense. The lack of actual risk cannot be dismissed as a mere fortuity, since the lodge that was involved in this case had been vacated for the winter season at the time it was burned, a fact known to Mossberg when he decided to commit the offense. Had the offense been committed under the current statutory scheme, it would have been classed as an arson in the second degree.

In our view, the fact that the premises involved in this case were unoccupied and the fact that there was no actual physical danger to others preclude a finding that Mossberg's conduct was among the worst within the definition of arson in the first degree. The various circumstances relied on by the sentencing court in finding that Mossberg's conduct approached the worst for the offense certainly establish that Mossberg's crime was among the most serious of arsons involving unoccupied dwellings, where no actual risk to human life is generated. It was error, however, for the sentencing court—in gauging the seriousness of the offense as a first-degree arson—to disregard the significance of the fact that the premises were unoccupied, and that no risk to others was created.

We further conclude that the record in this case does not support the sentencing court's finding that Mossberg is a particularly dangerous offender—one for whom a sentence in excess of ten years is appropriate. The ABA Standards recommend that sentences in excess of ten years be reserved for particularly dangerous offenders. *See* ABA *Standards For Criminal Justice* § 18–2.1(e) (2nd ed. 1982); *see also State v. Graybill,* 695 P.2d 725 (Alaska 1985); *Viveros v. State,* 633 P.2d 289 (Alaska App.1981). In construing these Standards, our decisions, and those of the Alaska Supreme Court, have tended to equate dangerousness with the likelihood of recidivism. *See, e.g., State v. Graybill,* 695 P.2d at 730; *Ecklund v. State,* 730 P.2d 161 (Alaska App.1986).

The most reliable measure of future danger is, of course, an offender's criminal record. *See Maal v. State,* 670 P.2d 708, 711 (Alaska App.1983). Here, because Mossberg was a first offender, his past conduct provides no sound basis for predicting that he will amount to a future danger. *See* ABA Standards, § 18–4.4. *See also Ecklund v. State,* 730 P.2d 161 (Alaska App.1986). Other predictors of recidivism, such as psychological profiles or the seriousness of an offender's conduct in a single case, are notably less reliable. *See Maal v. State,* 670 P.2d at 712. *See also* ABA Standards, §§ 18–2.2(e), 2.5(c) and accompanying commentary. Moreover, the sentencing record in this case is devoid of any other substantial indication that Mossberg is incapable of rehabilitation or cannot be deterred by a sentence of ten years or less.[3] Thus, the trial court erred in characterizing Mossberg as a particularly dangerous offender.

Finally, Mossberg's sentence must be tested against sentences received by other people committing similar crimes. *West v. State,* 727 P.2d 1 (Alaska App.1986); *Pears v. State,* 672 P.2d 903 (Alaska App.1983), *reversed on other grounds,* 698 P.2d 1198 (Alaska 1985); *Page v. State,* 657 P.2d 850 (Alaska App.1983). Our review of the sen-

---

**3.** In reaching this conclusion, we do not ascribe significance to Mossberg's decision to flee the jurisdiction while his case was on appeal. This conduct occurred after the original sentencing hearing and therefore could not have been relied on to justify Mossberg's sentence when it was first imposed. Moreover, as an indication of potential recidivism, Mossberg's decision to flee the jurisdiction ,is at best ambiguous. While this conduct evidences a willingness on Mossberg's part to engage in additional unlawful conduct to avoid responsibility for the original crime, it provides little indication of a proclivity to engage in additional criminal activity similar to that originally charged. Information concerning the time spent by Mossberg in Central America provides no basis for concluding that he engaged in further unlawful activities. Although Mossberg's apparently good behavior in Central America may not, in itself, establish successful rehabilitation on Mossberg's part, it certainly weighs strongly against concluding that Mossberg is incapable of rehabilitation.

tences imposed in other arson cases provides little support for imposition of a term in excess of ten years in this case. The most obvious comparison here is the case involving Mossberg's codefendant, Jimmy Ray "Flash" Williams. Williams was the person who actually set fire to the Bennett Lodge. He received the maximum term of twenty years for the offense; the sentence was upheld in *Williams v. State,* 614 P.2d 1384, 1386–87 (Alaska 1980). In upholding the sentence, however, the supreme court noted that Williams had three prior burglary convictions, stole a vehicle in the course of committing the arson, and had indicated that he was willing to kill, if necessary, to carry out his contract for the crime. Relying on these factors, the supreme court concluded that Williams was a professional criminal "deserving of society's severest condemnation." *Id.* at 1387 n. 4.

Mossberg is certainly not entitled to a more lenient sentence than Williams merely because Williams was the person who actually set the fire in the present case. If anything, Mossberg's role as the instigator of the arson scheme is more worthy of condemnation. Yet the distinction in the backgrounds of Mossberg and Williams, the fact that Williams committed additional offenses in carrying out the arson, and Williams' statements indicating a willingness to kill in order to accomplish his criminal purpose are all circumstances that distinguish Williams from Mossberg. In Williams' case, those circumstances justified a worst-offender finding. In Mossberg's case, no comparable finding can be made.

We are aware of only one other sentence appeal involving first-degree arson. In *Stumbaugh v. State,* 599 P.2d 166, 173–74 (Alaska 1979), the defendant set fire to a trailer home in a trailer park in order to collect insurance. He was convicted of first-degree arson and sentenced to five years and five months, with five years suspended. As in the present case, Stumbaugh was a first offender with a favorable background, his offense was premeditated, and it resulted in significant property damage. Unlike the present case, however, the fire set by Stumbaugh actually endangered the lives of people occupying trailers located in close proximity to the trailer in which the fire was set. Stumbaugh's sentence was not appealed by the state as too lenient, and the supreme court upheld it, holding that it was not too severe.

Two other arson cases deserve mention. While they deal with sentences imposed for second-degree arson, these cases involve conduct that is comparable in seriousness to Mossberg's. In *Putnam v. State,* 629 P.2d 35, 44–45 (Alaska 1980), the defendant, after doubling his insurance coverage, set fire to the building housing his carpet business. The fire caused more than $170,-000 in damage. Putnam was given a suspended imposition of sentence on condition that he serve ninety days in jail and pay $170,801 in restitution. The state appealed the sentence as too lenient. The supreme court, noting that the building was occupied and that its occupants were fortunate to escape unscathed and that arson, committed with the intent to defraud, is a calculated act, characterized the offense as among the most serious in its class. On this basis, the court disapproved the sentence, holding that a more substantial period of incarceration was required.

In *Jacinth v. State,* 593 P.2d 263 (Alaska 1979), Jacinth set a fire in a crowded bar. As a result of the incident, one occupant was killed. Jacinth was convicted of second-degree arson and manslaughter. He received consecutive sentences of ten years for the offenses. The supreme court upheld these sentences, noting that Jacinth had four prior felony convictions and qualified as a worst offender.

In our view, *Stumbaugh, Williams, Putnam,* and *Jacinth* provide little support for a sentence of more than ten years in the present case. To the contrary, these cases support the conclusion that a sentence exceeding ten years would be justified only if the defendant were a professional criminal or a particularly dangerous offender. While a finding of this type may be based

on the defendant's background, on the circumstances of the offense, or on both, *see, e.g., State v. Wortham,* 537 P.2d 1117, 1120 (Alaska 1975); *Burleson v. State,* 543 P.2d 1195, 1200 (Alaska 1975), neither Mossberg's background nor his conduct in committing this offense would support such a finding.

Accordingly, we conclude that imposition of a term in excess of ten years was clearly mistaken. *McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974). We find, however, that the factors relied on by the sentencing court provide ample basis for concluding that Mossberg's conduct was among the worst in the category of arsons involving unoccupied dwellings, where no actual risk to another person is involved. For this reason, we believe a sentence of up to ten years would not be excessive.

The sentence is VACATED, and this case is REMANDED for imposition of a sentence that does not exceed ten years in length.[4]

COATS, J., not participating.

---

**4.** Our decision makes it unnecessary to consider Mossberg's separate claim that the superior court erred in failing to modify his sentence in light of the revised criminal code's redefinition of arson. Mossberg has also argued that the superior court erred in declining to reduce his sentence in light of evidence indicating that Mossberg was rehabilitated during his absence from Alaska. We find no abuse of discretion in the sentencing court's denial of relief on this ground. *Davis v. State,* 566 P.2d 640, 643 (Alaska 1977).