Jacque T. NELSON and Gregory
Herring, Appellants,

v.

STATE of Alaska, Appellee.

Nos. 4773, 4774.

Supreme Court of Alaska.

May 22, 1981.

Eric L. Hanson, Abbott, Lynch & Farney, Anchorage, for appellant Herring.

Dan A. Hensley, Duncan, Weinberg, Palmer & Miller, Anchorage, for appellant Nelson.

David Mannheimer, Asst. Atty. Gen., Anchorage, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.

## OPINION

RABINOWITZ, Chief Justice.

Jacque T. Nelson and Gregory Herring were convicted after a non-jury trial of multiple counts of receiving and concealing stolen property. Sentencing on the multiple charges resulted in Herring receiving an aggregate sentence of nine years imprisonment with four years suspended and in Nelson receiving a sentence of six years with three suspended. Nelson and Herring attack their convictions on grounds that the search warrants and the indictment were invalid and that there was insufficient evidence presented to support their convictions. We have concluded that none of these grounds have merit and affirm the convictions. Nelson and Herring also attack their respective sentences as being excessive, illegal and violative of double jeopardy protections. We have further concluded that the restitution ordered as part of their sentences was unauthorized and that the multiple sentences imposed are, in the circumstances of this case, violative of double jeopardy.

The police, through informants, learned that Herring and Nelson were allegedly concealing stolen property. Thereafter, the state presented evidence to the district court which resulted in the issuance of four search warrants, one of which was for a trailer at 1545 Hoyt, space 33, in Anchorage, the purported residence of Herring and Nelson. Another warrant was for the house at 401 Pauline Court, the residence of Herring's mother and stepfather, Jerry and Doris Phillips. Execution of the search warrants resulted in the discovery of numerous items of stolen property resulting from a rash of burglaries that had occurred over the previous few months in Anchorage.

Nelson and Herring were arrested on charges of receiving and concealing stolen property and fraudulent use of credit cards (part of the stolen property). After a preliminary hearing was conducted, Nelson and Herring were not held to answer for the receiving and concealing charges. Subsequently, the state presented the same charges, and virtually the same evidence, to a grand jury. As a result, both defendants were indicted for multiple felony and misdemeanor counts of receiving and concealing, each count consisting of items stolen from a particular victim.

The defendants made several pre-trial motions attacking the grand jury indictment and the search warrants which were denied and are again raised on appeal. Trial by jury was waived and essentially the same evidence was presented to the court by the prosecution as had earlier been presented to the grand jury. The superior court found Nelson and Herring guilty on all counts for which they were tried.

I. Validity of the Indictment

■ Herring and Nelson make several attacks on the sufficiency of the indictment. The first ground of attack, advanced only by Nelson, is that the prosecutor failed to present exculpatory evidence. The claimed exculpatory evidence is certain testimony of Doris Phillips, the mother of co-defendant Herring, which suggests that Nelson did not reside in the trailer at the time of the offense and, thus, did not have constructive possession of the stolen items seized there.

In *Preston v. State*, 615 P.2d 594, 601–02 (Alaska 1980), we noted:

It is well established that the prosecutor 'should seek justice, not simply indictment or conviction.' *Frink v. State*, 597 P.2d 154, 165 (Alaska 1979). This court has long held that the prosecutor is obligated to 'disclose to the grand jury any evidence which he knows will tend to negate guilt.' The reason for this requirement stems from our view that 'before the accused suffers any of the grave inconveniences which are apt to ensue upon the return of a felony indictment, there should be a reliable determination made as to the probability of his guilt.' *State v. Gieffels*, 554 P.2d 460, 465 (Alaska 1976). The grand jury functions as a 'shield' as well as a 'sword' of justice, and 'should operate to control abuses by the government and protect the interests of the accused.' [footnotes omitted] [1]

In the case at bar, the grand jury proceeding was conducted after a preliminary hearing in which the district court refused to bind either Herring or Nelson over on the receiving and concealing charges, finding insufficient "evidence to show possession with the required knowledge." At argument during the preliminary hearing, counsel for Nelson emphasized the exculpatory nature of the testimony of Doris Phillips as to Nelson's residence in the trailer during the period of the arrest for receiving and concealing. A week before the grand jury hearing, counsel for Nelson made the following request of the prosecution:

You are hereby formally requested to present to the grand jury a copy and an explanation of Judge Williams' decision, a copy of the Memorandum of Law on Behalf of Defendant Jacque Theresa Nelson which I filed with the court on October 3, 1978, and all other exculpatory evidence.

Thus, the prosecutor was put on notice that Doris Phillips had given allegedly exculpatory testimony relating to the question of Nelson's possession of the stolen property. The prosecutor could well have assumed that such evidence was part of the basis for the district court's decision not to hold Nelson and Herring over for trial.

Given this court's mandate requiring prosecutors to disclose exculpatory material to the grand jury and the notice the prosecutor had that Nelson considered the testimony of Doris Phillips to be exculpatory, it was error for the prosecutor to fail to disclose to the grand jury such testimony, unless Doris Phillips' testimony was not in fact exculpatory. The questioned testimony is as follows:

---

1. Alaska R.Crim.P. 6(q) sets forth one aspect of the exculpatory evidence standard:

*Sufficiency of Evidence.* When the grand jury has reason to believe that other available evidence will explain away the charge, it shall order such evidence to be produced and for that purpose may require the prosecuting attorney to subpoena witnesses. . . .

We have previously held that '[a] requirement that the prosecutor present exculpatory evidence to the grand jury is implicit in the mandate of Criminal Rule 6(q).' *Frink v. State*, 597 P.2d 154, 165 (Alaska 1979). Patent in this assertion is recognition of the fact that '[t]he grand jury cannot be expected to call for evidence of which it is kept ignorant.' *Id.* at 165, quoting *Johnson v. Superior Court*, 539 P.2d 792, 794 (Cal.1975).

*Preston v. State*, 615 P.2d 594, 601 n.15 (Alaska 1980).

Q: Isn't it also true that sometimes when Jackie and Greg had an argument or a spat that they'd split up for a while?

A: Yes.

Q: As a matter of fact, let's go to May, early May of this year, if you can remember. Didn't Jackie and Greg have a fight in early May and Jackie went to Kodiak for a while, is that right?

A: True.

\* \* \* \* \* \*

Q: Let's—back in May you say—you said that Jackie and Greg had an argument and Jackie went to Kodiak.

A: Yes.

Q: And you've also testified that they lived together off and on. Do those roughly correlate to the times they were getting along and not getting along, the times they lived together and didn't live together?

A: Yes.

Q: Isn't it true that sometime during the week of maybe August 18th, August 25th, Jackie and Greg had a fight and Jackie . . .

A: Yes.

Q: . . . told him she was leaving again . . .

A: Yes.

Q: . . . isn't that correct? That was approximately six or seven days prior to the time Jackie was arrested?

A: Right.

Nelson argues that this exchange casts doubt as to the permanent nature of Nelson's residence at the trailer at the time the search was carried out. However, as the state notes, Doris Phillips' later testimony shows that as far as she knew, Nelson did not leave the trailer.

Q: Okay. Now, there was a question there about some time later in the month of August or something that Jackie called you and told you she was going to leave. Where did she say she was going to go?

A: She did not say. She just said she wanted to get away for a while.

Q: Did she leave?

A: No.

Q: She stayed?

A: I think so.

Q: Okay. As far as you know, she stayed.

A: As far as I know she did.

Viewing Doris Phillips' testimony as a whole, we do not find it to be exculpatory, i. e., reasonably tending to negate the guilt of Nelson. Therefore, we find no error in the prosecutor's failure to produce the testimony of Doris Phillips before the grand jury.

■ Nelson and Herring also argue that the grand jury indictment is invalid and should have been suppressed because of the introduction of irrelevant prejudicial testimony. The alleged irrelevant material consists of testimony given by the various burglary victims as to the extent of the property stolen, the method of the particular burglary, and the value of the stolen property. Nelson and Herring allege that the testimony should have been strictly limited to the stolen items charged in the indictments and that the victims should not have been allowed to discuss other stolen items that were not alleged in the various counts of the indictment. They complain that the introduction of other evidence was prejudicial in two respects:

First, by introduction of testimony concerning a large volume of stolen property which was not introduced into evidence, the prosecution implied that the defendant[s were] somehow responsible for the loss of that other property, as well as the property which is the subject of the instant matter. Second, by introduction of the means of burglary and the massive amount of items taken in the particular cases, the prosecution implied that the defendant[s were] responsible for the burglaries.

The definition of relevance found in Alaska Rule of Evidence 401 provides:

Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

The state concedes that the questioned evidence is largely irrelevant and the prosecutor should have avoided introducing it before the grand jury. Nevertheless, the state argues that the introduction of this testimony was not prejudicial. We agree with the state's position.

Study of the entire grand jury transcript discloses that this questioned testimony was treated only as background. There is no implication in the testimony that the police found only part of the goods stored by Herring and Nelson and that they were also harboring the rest of the stolen property; nor is there any implication that Nelson and Herring were involved in the burglaries. The questions the jury had to decide were whether those goods, which were established as having been stolen, were possessed by Herring and Nelson and whether they had knowledge that the goods were stolen. The fact that Nelson and Herring were found in possession of only a portion of the stolen property does not make the return of an indictment more likely. The grand jury could have concluded from this questioned testimony that Nelson and Herring were not involved in the burglaries themselves. We therefore conclude that any error in the presentation of this evidence would have little or no prejudicial effect, and thus hold that although a presentation of this evidence to the grand jury was error, at most it was harmless error.

Finally, Nelson and Herring attack the indictment on the ground that it does not comply with Alaska Criminal Rule 6(q) as to the sufficiency of the evidence. Rule 6(q) states: "The grand jury shall find an indictment when all the evidence taken together, if unexplained or uncontradicted, would warrant a conviction . . . ."

At the time of the offense, AS 11.20.350 provided:

*Buying, receiving, or concealing stolen property.* A person who buys, receives, or conceals money, goods, bank notes, or other things which may be the subject of larceny and which has been taken, embezzled, or stolen from another person, knowing it to have been taken, embezzled, or stolen, is punishable by a fine of not more than $1,000 and by imprisonment for not less than one year nor more than three years.

The parties agree that there are three essential components of a charge of receiving and concealing. The state must show (1) the property was stolen; (2) the defendants were in possession; (3) and, while in possession, they knew the property was stolen. There is no argument as to the first element as appellants concede that the property in question was stolen. Nelson and Herring attack the sufficiency of the evidence as to the two remaining elements of the offense.

■ Constructive possession is sufficient for the possession element of the offense. *Eliason v. State*, 511 P.2d 1066, 1073 (Alaska 1973). Constructive possession has been defined as "knowingly having the power and intention at a given time to exercise dominion or control over the property." *United States v. Cousins*, 427 F.2d 382, 384 (9th Cir. 1970) (citation omitted). Nelson and Herring contend that they did not even have constructive possession of the stolen items.

Herring was ultimately tried for possession of items at both locations; Nelson only stood trial as to possession of items at the trailer. Thus, as to the items found at the house, only the evidence presented to the grand jury relating to Herring's possession is relevant. With respect to the items found at the trailer, the evidence against both Nelson and Herring must be reviewed.

■ As to the Phillips residence, Herring concedes that there was stolen property found in the crawl space under his parents' home; that in addition to his parents, Jerry and Doris Phillips, only he had a key and access to the crawl space; and that his

fingerprint was found on an item of identification among the stolen goods discovered in the crawl space. However, Herring contends that this evidence is not sufficient to establish his constructive possession. He argues that the fingerprint was not on any of the items he was charged with receiving and concealing.[2] Given the presence of other stolen property from the same burglaries at the trailer, which was or had been Herring's home, and testimony by Jerry Phillips denying involvement by himself or his wife, we think this evidence sufficient to sustain the grand jury's finding of Herring's possession of the stolen property found in the crawl space.

■ The evidence connecting Herring and Nelson to the trailer was as follows: Jerry Phillips testified that both Nelson and Herring resided at the trailer in the summer, though Herring was also staying at other locations. Jerry saw them residing there around August 1 when he also saw that they had possession of two items of stolen goods in plain sight. When the search warrant was served at the trailer on the morning of August 28, Herring answered the door in his undershorts. Women's and men's clothing were found in the trailer, as were letters addressed to each of them. Herring and Nelson contend that this evidence is insufficient to tie them to the trailer. We disagree. There was testimony that they both had resided at the trailer only twenty-eight days before the search and at a time when there were items of stolen property in view. Herring was present alone in the trailer on the day of the search in circumstances suggesting that he had slept there the night before. · We think this evidence is sufficient to prove that he had controlling possession of the stolen property located in the trailer. The evidence as to Nelson is not as strong be-

cause she was not found at the trailer. However, the evidence of her residence in the trailer four weeks prior to the search and of the continued presence there of women's clothes and items bearing her name is highly probative. Thus, we hold that ample evidence was presented to the grand jury to support a finding of constructive possession by both Herring and Nelson of the stolen property found at the trailer.

■ The grand jury was instructed by the prosecutor that mere possession is insufficient to show knowledge and that the jury must have some other evidence to show knowledge by defendants that the goods were stolen. As to Herring's knowledge that the items in the crawl space were stolen, the state notes that the fingerprint found on the packet of ID's strongly suggests knowledge that they were stolen. To this is joined the hidden location of the goods and lack of knowledge of their placement by the Phillipses. We conclude that this evidence, considered as a whole, is adequate to support a finding of knowledge on Herring's part.

■ There is considerable evidence that Herring knew that the items in the trailer were stolen. The fact that property from each burglary was divided between the crawl space and the trailer, together with the packet of ID's concealed in the crawl space, constitutes significant circumstantial evidence of Herring's knowledge that the items seized in the trailer were stolen. Further, substantial evidence was presented of his fraudulent use of a credit card stolen from Robert Ely, one of the burglary victims, whose other stolen property was found in the trailer. We therefore hold the evidence sufficient to support a finding that Herring knew the goods were stolen.

Nelson was not directly tied to the stolen property found in the Phillips home at any

---

2. The print was on an ID card belonging to Dorothy Newby. Herring was not charged with receiving and concealing that card either at the district court preliminary hearing or at the grand jury hearing. The evidence of the fingerprint on the Newby voter registration card was received into evidence at the preliminary hearing, at the grand jury hearing, and at

trial. Here, the evidence of uncharged crimes was properly admissible as evidence that Herring knew that the other items found in the crawl space had been stolen. *United States v. Belle*, 516 F.2d 578 (8th Cir. 1975); *Parnell v. State*, 218 So.2d 535 (Fla.App.1969); *People v. Rife*, 382 Ill. 588, 48 N.E.2d 367 (1943).

point in the grand jury proceedings and was not connected with the packet of ID's by a fingerprint. The only evidence beyond mere possession of the numerous stolen items found in the trailer was the evidence that she had made fraudulent use of another of Ely's credit cards which had been stolen at the time of the burglary of Ely's house. This evidence, uncontradicted at the grand jury hearing, does support the indictment since the credit cards were stolen at the same time as two other items, found in the front bedroom of the trailer. Additionally, items from the various burglaries were found both in the crawl space and in the trailer.

## II. Validity of the Search Warrant

Finding the indictment valid, we must next consider Herring's[3] claims that one of the search warrants was invalid. Herring argues that the search of the residence of his mother and stepfather was illegal because of deficiencies in the warrant that was issued. On August 27, an ex parte hearing was held before District Court Judge Mason concerning four search warrants in connection with a series of burglaries. Four warrants were issued, including one for the trailer at 1545 South Hoyt, Space 33, the alleged residence of Herring and Nelson, and one for the residence of Herring's mother and stepfather, Doris and Jerry Phillips. Present at the search warrant hearing were two confidential informants who were not identified by name, the first—a female—designated as informant number one and the second—a male—designated as informant number two. Confidential informant number one testified that Nelson had told her that she (Nelson) and Herring were storing stolen goods in the trailer and that they stored some of the

stolen property at Herring's mother's place. The informant stated that she had never been to the Phillips' home but that the other informant had. She said he described it as being an end house at Sixth and Peck, a brown house with a carport with two cars parked out front. The district court, after further testimony, concluded that probable cause existed for issuance of the search warrants but that it was uncertain as to whether the address of the Phillips residence had been sufficiently established. The prosecutor stated that more information would be forthcoming.

At a later hearing that day, according to log notes, Officer Tom Walker testified that he was taken by an informant to the home of Doris Phillips at 401 Pauline Court and assured by the informant that the house belonged to Phillips. The warrant signed by the district court recited the address as 401 Pauline Court, brown house with carport. This later portion of the hearing was not electronically recorded, apparently as a result of a mechanical malfunction.

Herring and Nelson moved for suppression of the evidence seized in the search for failure to provide an adequate record for review. The superior court held that the log notes constituted a record and that it was sufficient when taken in conjunction with the transcript of the hearing to support a finding of probable cause for this address.

Herring initially contends that since Walker's testimony as to the correct address was not electronically recorded, there is no record. Herring notes that under both the state and federal constitutions, search warrants issue only upon probable cause supported by oath or affirmation.[4] Alaska Criminal Rule 37 requires that the search

---

**3.** Appellant Nelson does not join in this issue since she was, by successful pretrial motion, not prosecuted for receiving and concealing the stolen property found at 401 Pauline Court but only for that found at 1545 South Hoyt, Space 33.

**4.** United States Const., Fourth Amendment; Alaska Const., Art. I, § 14. AS 12.35.010 provides:

> *Issuance of search warrant.* A judicial officer may issue a search warrant upon a showing of probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the thing to be seized.

warrant issue only on "sworn testimony taken on the record in court." Alaska Administrative Rule 35(a) requires that electronic recordings be made for all court proceedings required to be on the record and that these recordings "constitute the official court record." [5] Herring asserts that equipment failure of a vital portion of the transcript which results in an unreviewable record requires suppression of the fruits of the search.

 If no record exists, then the search warrant must be suppressed. *See State v. Robertson*, 531 P.2d 1134 (Ariz. 1975) (en banc). However, the superior court determined that the log notes were a record. Alaska Administrative Rule 35(c), part of the same rule that states that the electronic recording is the official court record, also calls for the in-court clerk to maintain a "detailed, accurate and thoroughly legible written record." [6] Such a written record is not only for the convenience of the court and the transcript department in locating specific parts of the tapes, but is also a back-up record in those circumstances in which the tape is not recording and the clerk does not become aware of the non-recording through monitoring the tape.[7] The superior court found the log notes constituted a sufficient record.

We encountered the problem of non-recorded portions of testimony in a search warrant proceeding in *Milne v. State*, 607 P.2d 360 (Alaska), *on rehearing*, 614 P.2d

766, 767 (Alaska 1980). In *Milne*, the transcript of the search warrant hearing failed to show that either of the witnesses testifying in support of the warrant was placed under oath before being questioned. The magistrate who had conducted the hearing and one of the witnesses later testified that both witnesses had been placed under oath before being questioned. Our review of the record combined with the testimony of the magistrate and the witness in that case convinced us that the oaths had been given and we held that the constitutional requirement of an oath had been met. In so doing, we considered Criminal Rule 37(a)(i)(bb), which requires that a search warrant issue only on "sworn testimony taken on the record in court." We then announced our intention to prospectively enforce a requirement that oaths be on the record. In a footnote, we added:

> This requirement obviously cannot be applied mechanistically in every situation. For example: an injustice to the state would be done in a situation where recording equipment failed .... Accordingly, in certain circumstances, upon presentation of proof that an oath was properly given, the absence of a record thereof will not be fatal to the warrant.

607 P.2d at 362 n.2.

While the lack of an electronic recording of the testimony at the hearing in the case at bar renders this case somewhat analogous to *Milne*, we are in a better position to

---

**5.** Alaska R.Admin.P. 35(a) provides:

> Electronic recording equipment shall be installed in all courts for the purpose of recording all proceedings required by rule or law to be recorded. Such electronic recordings shall constitute the official court record. It shall be the responsibility of each judge or magistrate to require that the electronic recording equipment in his court be operated only by qualified personnel in such manner and under such conditions as to insure the production of a readable record of all proceedings.

**6.** Alaska R.Admin.P. 35(c) provides:

> The courtroom clerk or deputy clerk shall be responsible for maintaining a detailed, accurate and thoroughly legible written record of all proceedings recorded on each magnetic tape. The maintenance of such record shall

be according to instructions of the administrative director of courts.

**7.** Alaska R.Admin.P. 35(b) provides:

> Before commencing any proceedings required to be recorded, the judge shall satisfy himself that the electronic recording equipment is functioning properly, and during all proceedings shall require the clerk or deputy clerk to supervise the operation of and constantly monitor the input to the equipment and immediately notify him when the quality of the recording is doubtful. Where extraneous noises, interference, poor enunciation or other factors create doubt that the electronic record is sufficiently clear to permit full transcription, it shall be the responsibility of the judge to cause the doubtful proceeding to be repeated.

evaluate and review the proceedings here because there is a record: the notes of the in-court clerk, taken contemporaneously with the testimony. That clerk later testified that she had taken the log notes at the hearing and that they accurately reflected the testimony that had been given there. Officer Walker, the officer who testified at the hearing, also later testified that the log notes agreed with his recollection of his testimony at the hearing. Because a mechanistic application of Criminal Rule 37(a) in this instance due to a failure of the recording equipment would work an injustice to the state, and because the accuracy of the log notes taken by the clerk at the hearing is supported by the testimony of both the clerk who took the notes and the witness who testified, we hold that the log notes in this case suffice as a record of the search warrant hearing and that the absence of an electronic record of that hearing will not be fatal to the warrant.[8]

■ However, the question still remains whether the log notes, accepted as a record, are sufficiently detailed to support a search of the address used in the search warrant. The notes are as follows:

1239 Back on record
1240 D.A. Cyrus
1241 Off. Tom Walker sworn
D.A.—Did you go out to house
Walker—Doris Phillips house at 401 Pauline Ct.
Ct.—401 Pauline Ct. same house as house described in SW 78–146?
1261 Walker—Informa drove to res. & stated he knew res. belonged to mother Doris Phillips

We conclude that this record adequately sets forth the basis for the superior court's judgment if the reliability of the informant was established. This is the next assertion of error and will be treated separately.[9]

■ The log notes state that the basis for Officer Walker's testimony that the house of Doris Phillips was at 401 Pauline Court is that he was taken there by "informant." Herring asserts that the use of a confidential informant's testimony as a basis for a search warrant must be supported by evidence of the reliability of the confidential informant. He argued to the superior court that there is no way to tie this informant to the two informants who were in court for the earlier proceeding on the search warrant, whose reliability Herring concedes was established. The superior court ruled that by reasonable inference it could assume that the informant who led Walker to the Phillips residence was one of the two informants whose credibility had been earlier established. However, as Herring points out, despite the fact that Officer Walker was present at the hearing, and did testify as to other matters, he was not asked and did not testify as to the identity or reliability of the informant who led him to the Phillips residence.

The state makes a persuasive argument that it is reasonable to infer from the circumstances that, since informant number two was said to have been to the Phillips residence, he was the informant who took Officer Walker to the house. Under the circumstances, we find that the reliability of the informant was sufficiently established on the record.

■ Confidential informant number one was later revealed to be Denise Moreau, who was at that time a heroin addict. She gave vital testimony as to the presence of stolen property at both of the residences which were searched. Counsel for Herring filed, as part of his motion to suppress, an affidavit stating in part that:

---

8. We have previously held that the failure to record the proceedings of a bar disciplinary investigative committee does not constitute a denial of due process, *In re Cornelius*, 520 P.2d 76, 83 n.13 (Alaska), *on rehearing*, 521 P.2d 497 (Alaska 1974). Prior to the revision of Criminal Rule 6, we held that failure to record the proceedings before a grand jury does not constitute a denial of due process. *Bowie v. State*, 494 P.2d 800 (Alaska 1972); *Griggs v. State*, 494 P.2d 795 (Alaska 1972); *Robinson v. State*, 489 P.2d 1271 (Alaska 1971).

9. Having found no substantial basis for finding error in the issuing of the warrant, we need not consider the state's argument that the exclusionary rule does not apply even if there was error in the warrant process.

3. That upon information and belief Denise Moreau was a heroin addict at the time of her arrest and was taken to a hospital rather than Ridgeview Jail because of her addiction.

4. That upon information and belief Denise Moreau was still suffering from the effects of her heroin addiction at the time of the hearing on Search Warrants No. 78–145, 146, 147, and 148.

Herring argued that Moreau's credibility as an informant was thereby damaged and that the prosecution should have informed the district court of her condition. The superior court denied the motion based on the state's argument that the district court had had a chance to view the demeanor of the witness during the search warrant hearing and that this observation was sufficient.[10]

 Herring's argument rests on his factual assertion that the prosecutor never informed the district court of Moreau's heroin addiction or her present status during the hearing regarding the issuance of the search warrants. This assertion is incorrect, as the district court was informed of Moreau's addiction.[11] Thus, we find no basis for error.

### III. Conviction on Erroneous Legal Theory or Insufficient Evidence

 Nelson and Herring next allege that the superior court relied upon an erroneous legal theory, by which they were convicted. This was a non-jury trial, and,

prior to rendering its verdict, the superior court in discussion with counsel stated:

THE COURT: Mr. Hensley, in 66 Am. Jur.2d section 29, on receiving stolen property, there are cases cited for the proposition that evidence that the defendant's possession of other stolen goods prior to or at the time of the commission of the offense charged [i]s admissible as tending to establish that the defendant received with guilty knowledge the goods specified in the indictment et cetera. That's the point Mr. Cyrus was making when he said—based upon his argument that if I found that these—both of these people actually possessed all of the items in the trailer then I should take into account the fact that these came from many burglaries in order to determine that they had the guilty knowledge. Do you have any answer to that proposition or claim that it's not a good proposition of law in Alaska?

The superior court later clarified itself that it was only arguing that possession of goods from several burglaries tends to establish knowledge.

The statement of law—alleged statement of law which I've just made about possession of goods stolen from more than one burglary as tending to establish that the person who possesses these items knew that they were stolen.

Given the facts here, the superior court seems only to be suggesting that Herring

---

10. We have rejected a rule under which persons who use or are addicted to heroin are considered necessarily and inherently unreliable as witnesses. *Fields v. State*, 487 P.2d 831, 844 (Alaska 1971). Addiction of a witness is relevant only if that witness is under the influence of the drug or suffering from withdrawal (1) at the time of the events in issue, or (2) at the time of the testimony in court. *Braham v. State*, 571 P.2d 631, 647 (Alaska 1977), *cert. denied*, 436 U.S. 910, 98 S.Ct. 2246, 56 L.Ed.2d 410 (1978). Since Herring emphasizes only Moreau's withdrawal at the time of the hearing, and there is no indication that Moreau was under the influence at the time of the events about which she testified, the only time at which her addiction could have been relevant was during the hearing on the search warrants. The district court judge observed her at that

time, and could have detected the manifestations of withdrawal if they had been severe enough to impair her reliability as a witness.

11. Specifically, the exchange was as follows:
Q All right. And you don't remember this particular burglary because you've done numerous burglaries, is that correct?
A Yes.
Q All right. And that's because you have a heroin addiction, is that correct? And you need to . . . .
THE COURT: Let her answer.
Q Is that correct?
A Yes.
Q All right. And you needed the money, is that correct?
A Yes.

and Nelson's possession of large quantities of stolen property from several different recent burglaries is persuasive evidence of knowledge. We conclude that such a fact is somewhat probative of knowledge and the superior court did not employ an erroneous legal rule in concluding that Herring and Nelson were guilty of the charged counts of receiving and concealing stolen property.

Herring and Nelson seem to be suggesting that the superior court was using a rule of law that simple possession is sufficient to show knowledge if several burglaries are involved. We believe that the superior court was only alluding to one facet of the evidence which was supportive of the ultimate conclusion it reached.

■ Finally, Nelson and Herring contend that there was insufficient evidence as to their knowledge and possession to support their convictions. We have already concluded that there was sufficient evidence presented to warrant a return of a true bill by the grand jury. Essentially the same evidence was presented at trial, with the exception of evidence connected with Count VIII, concerning the Ely property, which was dropped because Ely was unavailable to testify at trial. In addition to the evidence which was presented to the grand jury, Doris Phillips testified that she saw Nelson at the trailer on the day the police searched it. This supplementary detail is additional probative evidence of Nelson's constructive possession of the stolen items found in the trailer. Under these circumstances, we hold that there was sufficient evidence to support the superior court's findings of guilt.

## IV. Sentence

■ In addition to terms of imprisonment, the superior court ordered both Nelson and Herring to make restitution to each individual named in the indictment for all losses incurred as a result of the burglaries. Nelson and Herring contend that this exceeded the superior court's statutory sentencing authority. AS 12.55.100(a)(2) provides that:

> the defendant may be required ... to make restitution or reparation to aggrieved parties for actual damages or loss caused by the crime for which the conviction was had; ...

The state conceded that, given the strict construction this court has given to the sentencing power of trial courts, the court was not authorized to require restitution for items beyond those as to which Nelson and Herring were actually convicted. Only some of the items involved in this series of burglaries were recovered from the two residences, and those items were the basis for the convictions of Herring and Nelson. Thus, the sentences of both Nelson and Herring must be remanded to the superior court for resentencing with the restitution award to be limited to the values of the actual items found to be part of the stolen goods that were received and concealed by them.[12] This is consistent with our recent opinion in *Hagberg v. State*, 606 P.2d 385, 387 (Alaska 1980), in which we noted that punitive damage awards cannot be given to burglary victims and that no restitution may be ordered in excess of the value of the items found by the jury to have been wrongfully taken.

Nelson was sentenced to two consecutive three-year sentences on the felony counts to be served concurrently with six one-year sentences on the other counts, with three years of the six-year total sentence suspended. Herring was sentenced to three consecutive three-year terms to be served concurrently with a three-year term and four one-year terms which are consecutive to each other, with four years of the nine-year total sentence suspended. In each case, the multiple sentences were based on separate counts in the indictment for property received and concealed from each separate burglary. Nelson and Herring argue that the consecutive and concurrent sen-

---

**12.** If these items have been returned to the victims, then there would be no basis for any award of restitution except to the extent of any damage done to the stolen goods.

tences[13] are in violation of the state and federal constitutional prohibitions of double jeopardy.[14]

The rule prohibiting double jeopardy was considered and discussed at length in our opinions in *Thessen v. State*, 508 P.2d 1192 (Alaska 1973), and *Whitton v. State*, 479 P.2d 302 (Alaska 1970). As applied to the case at bar, the doctrine has been succinctly stated:

> Where there has been but one statute violated by a single act, without intent to harm multiple victims, the Alaskan constitutional prohibition against placing a person in jeopardy twice for the same offense prevents imposition of multiple punishments.

*Thessen v. State*, 508 P.2d 1192, 1195 (Alaska 1973). Nelson and Herring argue that this case is controlled by *Thessen* and is analogous to the facts of *Thessen*. In *Thessen*, the defendant committed a single act of arson which resulted in the deaths of fourteen individuals. There we held that Thessen could only be sentenced for one of his fourteen manslaughter convictions, since all of the deaths were the result of his single act of arson, and the manslaughter convictions reflected the jury's conclusion that Thessen had not intended to kill any of the victims.

The state argues that in this case there was evidence sufficient for the superior court to find that separate intents were present, that is, that Nelson and Herring knew that the stolen property was from different victims. The state points to *Hunter v. State*, 590 P.2d 888, 902–03 (Alaska 1979), in which this court considered the situation of a theft by a janitor of items from two adjacent offices in a single building. In *Hunter* we stated:

> In *Davenport v. State*, 543 P.2d 1204, 1209 (Alaska 1975), we noted concern with multiple victim robberies and explicitly approved consecutive sentences. In *Mutschler v. State*, 560 P.2d 377 (Alaska 1977), we approved consecutive sentences for two counts of assault with a dangerous weapon, each count from an assault of a different person. However, in *Thessen v. State*, 508 P.2d 1192 (Alaska 1973), the fact that fourteen persons were killed from a single act of arson could not support multiple punishments because the jury's verdict of manslaughter indicated an absence of the intent to kill anyone. In each of the fourteen counts, there was but a single intent and conduct, that involved in the commission of arson.
>
> Here, the acts did involve the intent to steal from separate owners and the conduct of stealing separate items from each of the owners. There is a sufficient difference in intent and conduct so that separate punishments would not impose double jeopardy.

*Id.* at 903.

█ We required supplemental briefing in this case as to the applicability of the single larceny doctrine.[15] We believe that

---

**13.** In *Whitton v. State*, 479 P.2d 302, 314 (Alaska 1970), this court noted that if two sentences are imposed for the same offense, double jeopardy is violated whether the sentences are imposed consecutively or concurrently.

**14.** United States Const., Fifth Amendment; Alaska Const., Art. I, § 9.

**15.** The single larceny doctrine is summarized in Annot., 37 A.L.R.3d 1407, 1409–10 (1971) (footnotes omitted):

> The overwhelming majority of jurisdictions follow generally the so-called 'single larceny doctrine'; that is, that the taking of property belonging to different owners at the same time and place constitutes but one larceny. Various rationales have been propounded in support of this position, perhaps the most common one being that such taking is one offense because the act of taking is one continuous act or transaction, and since the gist of the offense is the felonious taking of property, the legal quality of the act is not affected by the fact that the property stolen belonged to different persons.
>
> Other rationales supporting the rule are concerned with the harshness of the punishment which might result from a contrary holding, or with the unconstitutionality of the double jeopardy to which a defendant would be subjected under a contrary decision.
>
> While several jurisdictions at one time followed the separate larcenies doctrine, under which there was a distinct larceny as to the property of each person, most have aban-

the single larceny rule is implicit in the spirit of our state constitutional protection against double jeopardy and should therefore be adopted in Alaska. In adopting this rule, we do not overrule *Hunter*. At this time, we limit the applicability of this rule to situations in which the prosecution has not proved separate intents to steal and sufficiently different acts of conduct to constitute separate offenses.

While the rule is generally used in larceny situations, it has also been held to apply in cases involving multiple charges of receiving and concealing. In *People v. Lyons*, 50 Cal.2d 245, 324 P.2d 556 (1958), the California Supreme Court stated:

> Defendant meritoriously contends that the receipt by him of the two items of property which are, respectively, the subjects of counts 5 and 6, constituted only one criminal transaction and that therefore he should not have been sentenced on two counts. The evidence of the accomplices shows that defendant originally received the watch and the fur coat on a single occasion. Therefore, but one offense of receiving stolen property is shown, although the goods were stolen from different sources, and the duality of the sentences, even though they are ordered to run concurrently, cannot be permitted to stand.

324 P.2d at 573 (citations omitted). In the case at bar, there was no evidence presented by the prosecution to prove that Nelson and Herring received the stolen goods for which they were tried on more than one occasion. Thus, under the single larceny rule, Nelson and Herring can stand convicted of only one count. The state has conceded this in its supplemental briefing.

doned that position in favor of the single larceny doctrine, although cases from one jurisdiction have continued to follow the separate larcenies doctrine.

Of the jurisdictions which at one time held that the stealing of property of different persons at the same time and place could be prosecuted at the pleasure of the government as one offense or as several distinct offenses, all but one have subsequently abandoned that position in favor of the single larceny doctrine.

Nelson has requested consolidation of the counts and remand for resentencing as the appropriate relief. Herring has requested vacation of the sentences on counts two through eight. As no party has addressed the relative appropriateness of either remedy, we think that the cases should be remanded to the superior court to allow them to do so.

This ruling renders it inappropriate and unnecessary for us to address the appellants' arguments that their sentences were excessive.

These cases are remanded for further proceedings in light of this opinion.

Even though the applicability of the single larceny doctrine is always limited to cases wherein the taking occurred at one time and from the same place, and is often limited to cases wherein the taking was a single act or transaction, there is some diversity in the construction of these requirements and in the manner in which they have been applied to various fact situations. Hence, no general statement can adequately describe the application of this doctrine, and a reading of individual cases is necessary.