**Jerry D. MARTIN, Appellant,**

v.

**STATE of Alaska, Appellee.**

**Nos. A–2432, A–2501.**

Court of Appeals of Alaska.

Aug. 17, 1990.

---

Jerry D. Martin, Seward, pro se.

Rex Lamont Butler, Anchorage, for appellant.

Valerie VanBrocklin, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON *, JJ.

## OPINION

COATS, Judge.

Jerry D. Martin was convicted of two counts of theft in the fourth degree, a class B misdemeanor, AS 11.46.150(a); three counts of theft in the second degree, a class C felony, AS 11.46.130(a)(1); one count of theft in the second degree, AS 11.46.130(a)(2) (theft of a firearm); one count of misconduct involving weapons in the first degree, a class C misdemeanor, AS 11.61.200(a)(1); and one count of criminal mischief in the third degree, a class A misdemeanor, AS 11.46.484(a)(2). Martin appeals his conviction on numerous grounds and appeals his sentence as excessive. We reverse Martin's conviction.

In the early part of July 1987, Trooper Wayne Selden was involved in the investigation of a series of burglaries which had taken place in the Hillside area of Anchorage. In connection with the burglaries, Selden put out a "locate" on a brown Cadillac registered to Marie Morgan. Morgan was romantically involved with Jerry Martin and had loaned her car to him on several occasions so that he could look for a job. On June 24, 1987, Martin borrowed Morgan's car for the last time. Morgan told Martin that she wanted the car returned within two hours. Martin did not return the vehicle, and Morgan reported the vehicle as stolen on June 25.

On July 10, 1987, at approximately 11:38 a.m., Officer Matthew Dahl was driving down an alley behind the Spenard Hotel. Dahl observed a brown car back out of the rear parking lot and then immediately pull back in. Dahl proceeded down the alley where he saw two cars parked side by side: a brown-and-tan Chevrolet Caprice and a brown Cadillac. The door on the driver's side of the Cadillac was open and moving slightly, and Martin was standing next to the driver's door of the Caprice. There was no one else in the immediate vicinity. Dahl asked Martin which car he had just backed up and Martin responded by pointing to the Caprice. Dahl noted that the tags on the Caprice were expired. Dahl then asked Martin who had been driving the Cadillac. Martin pointed to James Smith who was standing on some steps behind the hotel talking to his wife, Laurel. The Smiths are apparently friends of Martin.

Dahl asked Martin for a driver's license, and Martin responded that his license had

---

* This case was submitted for decision prior to Judge Singleton's resignation.

been suspended. Dahl then frisked Martin for weapons. During the frisk, Dahl felt a checkbook. Dahl looked through the checkbook and saw some credit cards. The checks and the cards all listed the name Harry Leslie. Dahl asked why Martin had said he did not have any identification. Martin answered that he had meant that he did not have any identification with a photograph. Martin then provided a birthdate and social security number. Dahl ran a check on this information to find a driver's license number, but neither the birthdate nor the social security number matched those which belonged to Leslie. Dahl then ran a check on the Caprice and the Cadillac. The Caprice was registered to James Smith. The Cadillac came back as stolen, and Jerry D. Martin was listed as the suspect of the theft. Dahl noted the birthdate for Jerry D. Martin nearly matched the birthdate which Martin had provided earlier.

Dahl radioed to the dispatcher to request back-up assistance. He handcuffed Martin, placed him in the back of his patrol car, and then left with the back-up officers to make contact with the man Martin had identified as the driver of the Cadillac. By this time, James Smith had left the scene, but Dahl did speak with Laurel Smith.

Trooper Selden arrived and Dahl turned Martin over to him. Selden put Martin into his car and informed Martin that he was being arrested for violation of parole. Apparently, Martin violated parole by going to a bar and by failing to submit to a urine analysis. Selden obtained permission from Morgan to search the Cadillac. When Selden executed the search, he discovered property reported as stolen from the Hillside area burglaries, including a Walther semi-automatic pistol.

In late August 1987, the Office of Public Advocacy (OPA) was appointed to represent Martin. Martin was arraigned on September 14, 1987, and trial was set for October 12, 1987. On September 11, 1987, the grand jury indicted Martin for: two counts of theft in the fourth degree, four counts of theft in the second degree, one count of misconduct involving weapons in the first

degree, and one count of criminal mischief in the third degree.

On November 3, 1987, OPA moved to withdraw from Martin's case on the ground Martin had expressed dissatisfaction with his representation. During the continued hearing on November 4, Martin learned that his trial had been assigned to Superior Court Judge Victor Carlson. On November 5, 1987, OPA's motion to withdraw was granted and a new trial date was set for November 30, 1987. On November 9, Martin filed a *pro se* motion for change of judge. Martin certified on the motion that he mailed it on November 5. Judge Carlson issued a written order on November 13 denying the motion as untimely based on his finding that the defense had notice of the trial assignment since September 28, 1987, by means of the trial calendar.

Rex Lamont Butler appeared at a November 17, 1987, status hearing as substitute defense counsel. Butler raised the peremptory challenge issue and Judge Carlson reiterated that the motion had been untimely.

Judge Carlson also denied Martin's motions to dismiss the indictment. Martin's motion to dismiss the indictment for insufficiency of admissible evidence was based on the argument that his arrest and the seizure of evidence from the Cadillac had violated the fourth amendment. Judge Carlson upheld the arrest and the seizures on the ground that there had been an outstanding warrant for Martin.

Martin also challenged the indictment on the ground that the felon-in-possession of a firearm charge should have been severed from the rest of the indictment proceedings. According to Martin, this charge introduced prior bad acts evidence in violation of Evidence Rule 404(b), which prejudiced the grand jury in its deliberations. The indictment was upheld.

Other motions which Martin made concerned the trial court's alleged error in not consolidating the theft by receiving counts; the trial court's failure to declare a mistrial; the excessiveness of his sentence; Martin's sanction for contempt; and the trial court's requirement that Martin, as

*pro se* co-counsel, coordinate his motion practice with that of his attorney, Butler.

This appeal followed.

## CHANGE OF JUDGE

■ Martin first contends that Judge Carlson erred in denying his motion for change of judge. Under Alaska Criminal Rule 25(d)(2), the defendant is entitled to peremptorily challenge one judge "[a]t the time required for filing the omnibus hearing form, or within five days after a judge is assigned the case for the first time, whichever is later...." Failure to file within the allotted time period constitutes a forfeiture of the right. Alaska R.Crim.P. 25(d)(4). Martin argues that his challenge was timely under either time limit set out in Rule 25(d), and that Judge Carlson therefore erred in denying his motion for a change of judge.[1]

Martin first claims that his peremptory challenge was timely because he filed his *pro se* challenge within five days of learning that Judge Carlson had been assigned to trial. However, according to the record, the court distributed trial calendars on September 28, 1987, which listed Judge Carlson as the judge for Martin's trial. The calendars included OPA on their distribution lists, and Martin's attorney presumably received them. Judge Carlson denied Martin's peremptory challenge on the ground that the motion was untimely based upon the trial calendars which listed him as the judge assigned to the case.

Martin cites *Smith v. State*, 616 P.2d 863 (Alaska 1980), for the proposition that we should apply Criminal Rule 25 from the time he received actual knowledge of the assignment of the case, rather than when the case was actually assigned. However, *Smith* is distinguishable because the parties in that case were unable to exercise a peremptory challenge because no judge had been assigned to their case. In the instant case, Martin has not challenged what the record suggests: that Judge Carlson was assigned to the case on September 28, 1987, and that the court system promptly conveyed this information to his attorney. Under Rule 25, Martin and his attorney were required to file a notice of change of judge within five days after a judge was assigned. The rule certainly contemplates that the court system will give prompt notice of the assignment, but the rule does not begin to run from the time that the defendant learns of the assignment, as Martin suggests.

Rule 25 also allows preemption "[a]t the time required for filing the omnibus hearing form." The rules, however, do not define what an omnibus hearing form is. It appears to be a form which the court might require the parties to file in order to facilitate an omnibus hearing. There is no indication that the court required the parties to file such a form, and therefore this portion of the rule seems to be inapplicable. Therefore, we find we cannot disagree with the trial court's decision that Martin's motion for change of judge was untimely.[2]

The trial court, of course, has discretion to relax the rules under Criminal Rule 53, if it finds that strict adherence will work injustice. However, Martin did not ask Judge Carlson to relax the rules. We conclude that Judge Carlson did not err in

---

1. The state originally argued that Martin was precluded from bringing this point on appeal because he did not bring an expedited appeal under Appellate Rule 216, as required by *Washington v. State*, 755 P.2d 401, 403 (Alaska App. 1988). However, the state conceded error at oral argument since Martin's challenges to Judge Carlson took place in November 1987, five months before the *Washington* decision. In *Washington*, we ruled that our decision that Appellate Rule 216 set out the exclusive remedy for seeking appellate review after the denial of a peremptory challenge motion did not apply retroactively.

2. In *Riley v. State*, 608 P.2d 27, 29 (Alaska 1980) (footnote omitted), the supreme court stated: "The decision whether or not to peremptorily excuse an assigned judge is a strategic one which should ordinarily be made by a lawyer after consultation with his client. Typically a non-lawyer will not have sufficient information concerning the assigned judge to make an intelligent decision as to whether the judge should be excused." Therefore, notice to the lawyer of the assignment of the judge appears to be an appropriate time to begin the Criminal Rule 25 clock, rather than when the client receives notice of the judicial assignment.

denying Martin's motion for a change of judge as untimely.

## SUPPRESSION ISSUES

Martin next argues that Judge Carlson erred in refusing to suppress evidence retrieved when Martin was stopped and arrested. At a pretrial suppression hearing, Martin argued that the stop and his arrest were illegal because at the time Dahl detained Martin, Dahl did not know of the outstanding warrant for Martin's arrest, nor did Dahl have any articulable reason for suspecting that Martin had committed or was about to commit a crime. Judge Carlson upheld the arrest on the ground that there had been an outstanding warrant at the time of the stop. He concluded that Dahl's initial act of knowledge regarding the warrant was irrelevant. Martin challenges Judge Carlson's ruling.

 In determining whether an officer is justified in making an investigatory stop or whether he has probable cause for arrest, we look to the objective information which the officer has. *State v. Kendall*, 794 P.2d 114, 116 (Alaska App., 1990). Since Dahl was unaware of the fact that there was an outstanding warrant for Martin, the warrant was not part of the objective information which Dahl could have used in determining whether to stop Martin. Therefore, Judge Carlson erred in relying on the warrant to justify the stop and subsequent arrest.

At oral argument of this case, the state appeared to concede this point. However, the state argues that, even taking the evidence in the light most favorable to Martin, this court should rule that the stop and subsequent arrest of Martin was proper. We disagree.

There are essentially three types of contact between police and private citizens: (1) a generalized request for information, such as questions asked to bystanders at the scene of a crime; (2) an investigatory stop supported by an articulable suspicion that an individual has committed or is about to commit a crime; and (3) an arrest based upon probable cause, *i.e.*, facts and circumstances which would lead a reasonable person to believe a crime had been committed by the individual being arrested. *Howard v. State*, 664 P.2d 603, 608 (Alaska App. 1983). In determining which kind of contact occurred under the applicable law, the trial court must first make factual findings concerning what actually occurred. In arguing that this court can uphold the stop and subsequent arrest of Martin, the state asks us to accept Officer Dahl's testimony, at least where the officer was not directly contradicted by Martin. Assuming for the sake of argument that we could uphold Judge Carlson's denial of Martin's suppression motion in this matter, we conclude that it would be improper for us to do so. Trial courts are much better equipped to determine questions of fact. This court is in no position to resolve questions of credibility from a transcript. It would be improper for us to attempt to resolve this question along the lines which the state suggests. We accordingly remand the suppression issue to the trial court for reconsideration and express findings.

## INDICTMENT ISSUES

 Martin argues that the trial court erred in not dismissing the indictment because the state did not sever the felon-in-possession of a firearm charge from the other counts against Martin at the grand jury proceeding. Martin's argument is precluded by our decision in *Elerson v. State*, 732 P.2d 192, 195 (Alaska App.1987) (where the weapon is the subject of a theft by receiving charge and also the subject of a felon-in-possession charge, the two offenses are properly joined in an indictment if they stem from the same act or transaction).

Martin also argues that Judge Carlson erred in refusing to dismiss his indictment because the indictment was based upon illegally obtained evidence. On this point on appeal, Martin essentially argues the suppression motion which we have previously discussed. We do not decide this issue since it may turn on the trial court's resolution of Martin's suppression issue.

## TRIAL ISSUES

◼ Martin contends that Judge Carlson erred in denying his various motions for a mistrial which were based on the state's introduction of evidence of bad acts for which Martin had not been charged in this case. Admission of testimony of other crimes, wrongs, or acts is governed by Evidence Rules 403 and 404. Evidence Rule 404(b)(1) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Evidence Rule 403 states:

> Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

In determining whether to admit evidence of a prior bad act, the trial court is to make a two-fold inquiry. First, the court must determine that the evidence to be admitted has relevance apart from propensity. Second, the court must determine that the non-propensity evidence outweighs the presumed highly prejudicial impact of the evidence. If there is no genuine non-propensity reason for admitting the evidence, the court never even reaches the balancing step. *Lerchenstein v. State*, 697 P.2d 312, 315–16 (Alaska App.1985), *aff'd*, 726 P.2d 546 (Alaska 1986).

◼ Martin first argues that Judge Carlson erred in denying his mistrial motion because the prosecutor indicated in her opening statement that Trooper Selden recognized Jerry Martin. However, after reviewing the prosecutor's opening statement, we conclude that the jury would not infer from the prosecutor's statement that Martin had engaged in prior bad acts. The inference that Selden knew Martin because he had committed prior crimes was not an inference which the prosecutor drew, and it is not one which we would expect the jury to draw from the mere fact that Selden recognized Martin.

◼ At trial, Harry Leslie testified that several items had been stolen from his residence, including the checkbook which the police found on Martin. The burglary occurred about two days before Martin's arrest. Leslie testified that after the troopers called him to tell him they had found the checkbook, he stopped payment on all of the checks from that account. He indicated that he later discovered that several unauthorized checks were written on this account. Martin argues that this evidence was inadmissible since it tended to indicate that he was involved in a crime for which he had not been charged—passing forged checks. However, we believe that Judge Carlson could properly conclude that the information was relevant to show that the checks had been stolen and that it was likely that Martin knew that the checks were stolen. We find no error.

◼ Martin next argues that Judge Carlson erred in failing to grant his mistrial motion following the testimony of Marie Morgan. Morgan was the person from whom Jerry Martin took the Cadillac. She testified that she met Jerry Martin at the Cordova Center. The Cordova Center is a half-way house, but Morgan did not indicate this in her testimony. Martin's concern was that some of the members of the jury might know that the Cordova Center was a half-way house and might infer from this that Martin had a criminal record. During her testimony, Morgan also referred to a time where she put up bail for Martin to get out of jail. Morgan did not indicate why Martin was in jail, but Martin expressed concern that the jury might infer from this incident that he had a prior criminal record. At another point in her testimony, Morgan indicated that Martin had told her that he wanted to straighten his life out "and how he didn't want to be a criminal anymore...." These references were obviously prejudicial to Martin, and the admission of this testimony was improper. We will discuss whether the preju-

dice to Martin was substantial enough to require us to reverse the case in connection with another error which Martin has raised.

In her final argument, the prosecutor stated the following:

We know what else Jerry Martin did. After he left that Cadillac. And that is frightening. He had a loaded gun in the front seat. And you know, probably for a second, he thought about using it. Because the safety was off. [At this point there was an objection by Martin's counsel which was overruled.] The safety was off on that gun, ladies and gentlemen of the jury. I think we're lucky that we have Officer Dahl here to testify. But he thought better of it. Jerry Martin's just a property criminal. He's just a thief. He put the gun back under the seat.

This argument was highly improper. Martin was not accused of attempting to assault Dahl, and there is no evidence supporting this assertion. The argument did little to advance the state's theft cases, except to prejudice the jury against Martin by suggesting that he came very close to attempting to kill a police officer.

We conclude that the combination of Morgan's references to Martin's prior criminal record together with the prosecutor's improper argument which suggested that Martin contemplated killing Dahl was sufficiently prejudicial that Judge Carlson erred by refusing to grant Martin's motion for a mistrial. The state has not advanced a harmless error argument or emphasized the strength of its case in replying to Martin's argument on this point, but we recognize that the state's case against Martin was very strong. However, we conclude that the injection of Martin's prior criminal record into the trial in combination with the prosecutor's improper argument was sufficiently prejudicial so as to entitle Martin to a new trial. We accordingly reverse Martin's conviction.

## CONTEMPT

Although our reversal of Martin's conviction makes it unnecessary for us to review many of Martin's contentions on appeal, some issues still remain which must be resolved. Martin contends that Judge Carlson erred in finding him in contempt of court when Martin failed to supply handwriting exemplars to a state trooper. From the sketchy record which we have on this matter, it appears uncontested that the court issued a search warrant which authorized the trooper to obtain handwriting exemplars from Martin in connection with a forgery charge. The trooper went to the jail and asked Martin to supply the handwriting exemplars. Martin refused. On October 20, 1987, Martin appeared before Judge Carlson on an order to show cause because Martin had failed to provide the handwriting exemplars. The state supported the order to show cause with an affidavit from an assistant district attorney which represented that when the trooper went to the jail to get the handwriting exemplars, Martin refused to give the handwriting exemplars even though the trooper told Martin that he had a court order.

At the time of this hearing, Martin was represented by an attorney from OPA on the burglary charge. The attorney indicated to the court that she was not aware of a court order which required Martin to supply handwriting samples. The attorney indicated that she had never received notice of the order to show cause. Judge Carlson asked for the attorney's comment. The attorney responded that she would have advised Martin to give a handwriting sample if she had been aware of a court order. At this point, Judge Carlson ordered that Martin be held without bail until he gave the handwriting exemplars. Martin attempted to interject at this point, but Judge Carlson told Martin to discuss the matter with his attorney.

At sentencing, Judge Carlson stated that Martin's sentences on the substantive charges would run consecutively to the time which Martin was serving on two other charges and on the contempt charge.

■ In its brief, the state argues that this court does not have jurisdiction to re-

view a civil contempt. Alaska Statute 09.-50.050 provides:

> When ... contempt consists of the omission or refusal to perform an act which is yet in the power of the defendant to perform, the defendant may be imprisoned until the defendant has performed it.

Alaska Statute 22.07.020 establishes the jurisdiction of the court of appeals. That statute provides in part that:

> (a) The court of appeals has appellate jurisdiction in actions and proceedings commenced in the superior court involving:
>
> (1) criminal prosecution....

We believe that AS 22.07.020 is phrased broadly enough to allow us to assume jurisdiction in this case. The contempt order arose out of a search warrant which the state obtained to advance a criminal prosecution. The defendant has a related appeal pending in this court which we have decided in the earlier part of this opinion. The imprisonment which arises out of the contempt has a clear effect on the defendant's sentence. *See* AS 22.07.020(b), which gives this court jurisdiction to hear sentence appeals. It appears to us that judicial efficiency will be greatly promoted by our accepting jurisdiction of this case, and our acceptance of jurisdiction in this case appears to be consistent with the legislative intent of AS 22.07.020.

 We now consider the merits of Martin's claim. We conclude that we must vacate the superior court's order finding Martin in contempt. The record of the contempt hearing shows that Martin was not given an adequate opportunity to respond to the order to show cause. The record shows that his attorney was unaware of the order and had not consulted with Martin on this matter. Under AS 09.50.050, the superior court does have jurisdiction to imprison a person who refuses to follow a lawful court order to perform an act which is within his power to perform. However, before exercising this power, the court has the duty to determine that the defendant has willfully refused to obey a lawful court order and that he will continue to refuse to obey the court order. *See Johansen v. State*, 491 P.2d 759 (Alaska 1971). Since the record does not adequately reflect this, we vacate the order of the superior court holding Martin in contempt for refusal to supply the handwriting exemplars.

## *PRO SE* REPRESENTATION

 Finally, Martin contends that Judge Carlson erred in refusing to allow him to file his own *pro se* motions. Judge Carlson required defense counsel to coordinate all of the motions and pleadings. Martin contends that he was denied his "fundamental constitutional right" of ready access to the courts. The defendant has a constitutional right to counsel. U.S. Const. amend. 6; Alaska Const., art. 1, § 11. The right to self-representation is also constitutionally protected. U.S. Const. amend. 6; Alaska Const., art. 1, § 21. However, the right to participate as co-counsel or to have hybrid representation is not constitutionally protected. "The trial court has broad discretion to deny hybrid representation or co-counsel status." *Garrison v. State*, 762 P.2d 465, 467 (Alaska App.1988) (quoting *Ortberg v. State*, 751 P.2d 1368, 1375 (Alaska App.1988)). The trial court also has broad discretion to regulate trials and control the conduct of counsel in the courtroom. *Cano v. Municipality of Anchorage*, 627 P.2d 660, 664 (Alaska App.1981). We conclude that Judge Carlson acted within his discretion in requiring defense counsel to coordinate all motions and pleadings. Alaska R.Civ.P. 81(c) (incorporated by reference, Alaska R.Crim.P. 50(b)). The trial court is not required to allow a defendant who is represented by counsel to file his own motions. This could cause considerable confusion. The trial court therefore has the authority to require a defendant who is represented by counsel to act through counsel.

## CONSOLIDATION FOR SENTENCING

There is one other issue which we have concluded we should decide for the purpose of advancing this litigation. Martin argues that Judge Carlson erred in failing to con-

solidate all of the theft by receiving counts for purposes of sentencing. Martin was convicted by a jury of six counts of theft by receiving: four counts of second degree theft by receiving and two counts of fourth degree theft by receiving. AS 11.46.-130(a)(1), (2); AS 11.46.150(a); AS 11.46.-190. The state charged Martin with separate counts of theft by receiving based on the fact that he was in possession of property which was taken from five separate victims. The state charged an additional count of theft in the second degree because the property stolen was a firearm. AS 11.46.130(a)(2). Martin appeals the trial court's denial of his motion to consolidate the six counts into one count of theft by receiving. The state confesses that it was error for Judge Carlson to refuse to consolidate the theft by receiving counts, which were based on the fact that the property was taken from separate victims. However, the state argues that the theft of a firearm count was a distinct offense and was properly charged as a separate count and entered as a separate conviction.

 Although a confession of error by the state is entitled to great weight, this court must independently review the proceedings below to ensure that the error confessed is supported by the record on appeal and has legal foundation. *Marks v. State*, 496 P.2d 66, 67–68 (Alaska 1972). The state bases its confession of error on the "single larceny doctrine" as applied in *Nelson v. State*, 628 P.2d 884, 896–97 (Alaska 1981). The single larceny rule provides that "the taking of property belonging to different owners at the same time and place constitutes but one larceny." *Id.* at 896 n. 15 (quoting *Annot*, 37 A.L.R.3d 1407, 1409–10 (1971)). The rule is limited to situations in which the prosecution has not proved separate intents to steal and sufficiently different acts of conduct to constitute separate offenses. While the rule is generally used in the context of larceny, it can also be applied to cases involving multiple charges of receiving and concealing. Where there is no evidence

showing that an individual received stolen goods on more than one occasion, there can only be one count of theft by receiving. *Id.* at 897. We agree with the state that *Nelson* requires us to conclude that Judge Carlson erred in failing to consolidate the theft by receiving offenses, counts I, II, III, IV, and VII, which were separated only by the fact that the property which Martin possessed was taken from separate victims.[3]

 We also agree with the state that it could properly separately charge Martin under AS 11.46.130(a)(2) with the theft of a firearm. AS 11.46.130 provides as follows:

*Theft in the second degree.*

(a) A person commits the crime of theft in the second degree if the person commits theft as defined in AS 11.46.100 and

(1) the value of the property or services is $500 or more but less than $25,000;

(2) the property is a firearm or explosive; or

(3) the property is taken from the person of another.

(4) The value of the property is $50 or more but less than $500 and within the preceding five years the person has been convicted and sentenced on two or more separate occasions in this or another jurisdiction of [certain enumerated offenses].

(b) Theft in the second degree is a class C felony.

In the Senate Journal Supp. No. 47 at 32–33 (June 12, 1978), the Legislature stated that AS 11.46.130(a)(2)

... provides that the theft of any firearm or explosive, regardless of value, is theft in the second degree. This provision is included because of the frequency with which stolen firearms and explosives are used in committing other crimes.

It appears to us that the legislature had a specific purpose to punish the theft of a

---

**3.** *See also* AS 11.46.980(c) ("In determining the degree or classification of a crime under this chapter, amounts involved in criminal acts committed under one course of conduct, whether from the same person or several persons, shall be aggregated.").

firearm as a separate crime distinct from the theft of other kinds of property. We therefore conclude that the theft of a firearm is not included within the single larceny rule and that Martin could be separately convicted and punished for the theft of a firearm.

The conviction is REVERSED; the contempt order is VACATED; and the case is REMANDED.